UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| MARIO GIL | CIVIL ACTION NO.: 6:24-cv-00201 |
| VERSUS | JUDGE SUMMERHAYS |
| ABC INSURANCE COMPANY, ENI US OPERATING CO., INC., and SAIPEM AMERICA, INC. | MAGISTRATE JUDGE AYO |

## MEMORANDUM IN SUPPORT OF SAIPEM (PORTUGAL) COMERCIO MARITIMO, SU, LDA'S MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

/s/ Alexander J. Baynham
Thomas P. Diaz (Bar #18863)
Alexander J. Baynham (Bar #36369)
Lance C. Bullock (Bar #38519)
**LISKOW & LEWIS**
Hancock Whitney Center, Suite 5000
701 Poydras Street
New Orleans, Louisiana 70139
Telephone: 504-581-7979
Facsimile: 504-556-4108
Email: tpdiaz@liskow.com
Email: ajbaynham@liskow.com
Email: lbullock@liskow.com

and

**MURPHY, ROGERS, SLOSS,
GAMBEL & TOMPKINS**

/s/ Peter B. Tompkins
Peter B. Tompkins (#17832)
ptompkins@mrsnola.com
Timothy D. DePaula (#31699)
tdepaula@mrsnola.com
Suite 400, Hancock Whitney Center
701 Poydras Street
New Orleans, Louisiana 70139

-ii-

Telephone: (504) 523-0400
Facsimile: (504) 523-5574

***Attorneys for Saipem (Portugal) Comercio Maritimo, SU, LDA***

# TABLE OF CONTENTS

I.    Introduction ........................................................................................................ 1

II.   Statement of Material Facts Not Genuinely Disputed .................................... 1

III.  Summary Judgment Standard ......................................................................... 5

IV.   Analysis ............................................................................................................ 6

      A.  33 U.S.C §905(b) is Plaintiff's Exclusive Remedy Against Saipem. ........................... 6

      B.  Plaintiff Has No Evidence of a "Hazard" Under Saipem's Active Control. ................. 7

      C.  Lack of or Insufficient Non-Skid is Not an "Unreasonably Dangerous Working
          Condition" Under § 905(b). ......................................................................... 10

V.    Conclusion ..................................................................................................... 11

## TABLE OF AUTHORITIES

**Cases**

*Becker v. Tidewater, Inc.*, 335 F.3d 376 (5th Cir. 2003) .................................................................. 6

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ...................... 5, 6

*EEOC v. Simbaki, Ltd.*, 767 F.3d 475 (5th Cir. 2014) .................................................................. 6

*Galindo v. Precision Am. Corp.*, 754 F.2d 1212 (5th Cir. 1985) ................................................... 5

*Hamilton v. Targa Transp. LLC*, No. 16-2614, 2018 WL 2010294 (S.D. Tex. Apr. 30, 2018) ....11

*Howlett v. Birkdale Shipping Co. S.A.*, 512 U.S. 92 (1994) ....................................................... 6, 7

*Kitchens v. Stolt Tankers B.V.*, 657 F. App'x 248 (5th Cir. 2016) .................................. 1, 7, 9, 10

*Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) ............................................................. 5, 6

*Patil,  v. Amber Lagoon Shipping GmbH & Company; Macs Mar. Carrier Shipping GmbH & Co.*, No. 21-30004, 2021 WL 3889288 (5th Cir. Aug. 31, 2021) ........................................... 8

*Pimental v. LTD Canadian Pac. Bul*, 965 F.2d 13 (5th Cir. 1992) ............................................... 7

*Relf v. Wal-Mart Stores, Inc.*, 49 F.3d 728 (5th Cir. 1995) ............................................................. 4

*Renteria v. Grieg Star AS*, 168 F.4th 775 (5th Cir. 2026) .......................................................... 1, 7

*Scindia Steam Nav. Co. Ltd. v. De Los Santos*, 451 U.S. 156 (1981)..................................... passim

*Thompson v. Cargill, Inc.*, 585 F. Supp. 1332 (E.D. La. 1984).................................................... 10

*Verret v. Dean Boats, Inc.*, 87–1237, 1989 WL 81274 (E.D. La. July 20, 1989)..........................11

**Statutes**

33 U.S.C. § 901 *et seq*................................................................................................................... 6

33 U.S.C. § 905(b) ..................................................................................................................... 1, 6

**Rules**

Fed. R. Civ. P. 56(a) ....................................................................................................................... 5

Fed. R. Evid. 403, 407 ................................................................................................................... 4

**Treatises**

10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)...................................................................................................................................... 6

## I.    Introduction

Plaintiff, Mario Gil's, negligence claims against Saipem (Portugal) Comercio Maritimo, SU, LDA ("Saipem") as the owner of the drillship on which he allegedly slipped and fell are governed exclusively by the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 905(b), and the duties set forth in *Scindia Steam Nav. Co. Ltd. v. De Los Santos*, 451 U.S. 156 (1981).[1] *See also Renteria v. Grieg Star AS*, 168 F.4th 775, 780 (5th Cir. 2026) (Summerhays, J.). Summary judgment is appropriate here because Plaintiff is unable to prove an essential element of his § 905(b) negligence claims against Saipem, *i.e.* there is no evidence of a "hazard" under Saipem's control that caused Plaintiff to slip. *See Kitchens v. Stolt Tankers B.V.*, 657 F. App'x 248, 251 (5th Cir. 2016). Accordingly, there is no genuine issue of material fact, and Plaintiff's claims against Saipem should be dismissed as a matter of law.

## II.    Statement of Material Facts Not Genuinely Disputed

This case arises out of a February 20, 2023, unwitnessed slip and fall on Saipem's SANTORINI drillship, which was performing well completion services for ENI US Operating Co. Inc. ("ENI US") in Mississippi Canyon Block 728 in the Gulf of America on the Outer Continental Shelf. Plaintiff was employed by Advanced Tool & Supply, LLC ("ATS") as a Project Interface Manager.[2] ATS was contracted to Halliburton Energy Services, Inc., who, in turn, was a contractor

---

[1]    While Plaintiff alleges that he was a Jones Act seaman in his Second Amended Complaint (Rec. Doc. 32), the undisputed evidence in this case proves otherwise. Defendants have filed a Motion for Partial Summary Judgment on seaman status concurrent with the instant motion. Plaintiff also plead alternative causes of action under 33 U.S.C. § 905(b) in his Second Amended Complaint. *See id.* at ¶7.

[2]    Curiously, Plaintiff did not sue ATS, never applied for workers' compensation benefits for this incident, is still employed by ATS, has not missed a single paycheck, and has even been promoted since the incident.

of ENI US. ATS had no direct contractual privity with Saipem.[3] At the time of the incident, Plaintiff was temporarily working on the SANTORINI to rig up, test, operate, and monitor an ATS tool being used in the well completion process.[4]

Plaintiff alleges that on February 20, 2023 at approximately 11:30 a.m., his right foot slipped on a single metal step causing him to fall to the floor after he exited a port-o-let bathroom located outside of the rig floor on the port side of the vessel.[5] Plaintiff testified that he had been to this particular port-a-potty "[a] lot" in the time that he worked on the vessel and had traversed the step in question "many times" without incident prior to the incident.[6] In fact, Plaintiff walked up and down the step in question at approximately 6:00 a.m. that morning, and he did not see anything on the step and did not slip.[7] Plaintiff also successfully used the step on his way to the bathroom immediately before the incident and did he see anything on the step at that time.[8]

---

[3]    *See* Deposition of Mario Gil at p. 350:2-350:10, attached hereto as Exhibit 1.

[4]    *See id.* at p. 224:19-226:11.

[5]    *See id.* at p. 334:15-18.

[6]    *See id.* at p. 235:23-236:22; 330; 249:8-15; 330:10-330:16.

[7]    *See id.* at p. 330:17-332:1.

Plaintiff also does not have knowledge of a substance getting on the step between 6:00 a.m. and 11:30 a.m. when he allegedly slipped. *See id.* at p. 333:1-333:11. Nor is there any evidence that Saipem had knowledge of any alleged hazardous condition on the step during that timeframe. *See id.* at p. 333:12-18; *see also* Deposition of Master Robert Paul Morris at p. 95:16-96:2, attached hereto as Exhibit 2. Similarly, Plaintiff testified that no one else on the vessel said anything to him about the step being problematic. Exh. 1 (Gil Depo) at p. 237:11-18.

[8]    *See id.* at p. 237:3-10; 333:19-25. Plaintiff also confirmed in his deposition that: 1) no substances got on his boots in the port-o-let (*id.* at 334:9-14); 2) his boots did not cause him to slip (*id.* at p. 336:2-8); 3) the seas were good at the time of the incident (*id.* at 339:16-23); 4) it did not rain that day and there was no condensation on the deck (*id.* at 335:8-14); 5) it was daylight, and he could "clearly" see the step (*id.* at 336:21-337:11); 6) there was nothing about the construction or configuration of the step that caused him to slip (*id.* at 336:9-19; 338:11-20).

Plaintiff testified unequivocally that he did not see any substance on the step after the incident and only saw a mark made by the heel of his boot.[9] He also specifically denied seeing oil or "honey oil" from slickline operations on the step:

Q. Right. But you didn't see any oil on the step in particular –

A. Yeah.

Q. – that—

A. No, sir.[10]

[ . . . ]

Q. –slick line. Yea, right. You don't have any knowledge that there was any honey oil actually on the step that you slipped on; right?

Mr. Moroux: Object to the form.

The Witness: No, sir.[11]

After the incident was reported to Saipem several hours later, the SANTORINI Master, Robert Paul Morris ("Master Morris"), personally inspected the step and surrounding area and found no foreign substances or hazardous conditions.[12] Master Morris also testified that the step had a "shipyard finish, which has a fine non-slip" that "is inherently part of the paint" and that the step was in good condition and inspected regularly.[13] The Saipem Incident Investigation Report memorialized that inspection confirming there were "no fluids or slippery surface in area" and

---

[9]     *See id.* at p. 334:21-335:7.

[10]    *Id.* at p. 335:22-336:1.

[11]    *Id.* at p. 339:24-340:13.

Plaintiff also claimed in deposition that there was "grease" on his coveralls after the alleged fall but ultimately conceded he did not know where the grease came from. *See id.* at p. 267:18-268:7.

[12]    Exh. 2 (Morris Depo) at p. 40:24-41:9.

[13]    *Id.* at p. 30:1-10, 47:18-48:11.

-3-

noted that the step was in "good condition."[14] Plaintiff also provided a hand-written statement the evening of the incident, which does not mention any hazard or substance that he purportedly slipped on.[15] Further, the day after the incident, Plaintiff filled out a Daily Rig Operations Status Report simply mentioning that he lost his footing on "some slick steel plating coming off some stairs and twisted my knee."[16] A photograph of the step and surrounding area was also taken several hours after the incident as part of the investigation, but Plaintiff testified that he cannot identify anything in the picture that allegedly made him slip.[17]

To be clear, Plaintiff was a highly trained and experienced offshore worker.[18] When asked whether he considered himself an experienced and well-trained offshore worker, Plaintiff responded: "The best, yes."[19] Of course, Plaintiff knew "it was [his] job" to report unsafe acts every day by turning in a "stop card."[20] He also knew about Saipem's "House Safety Rules"

---

[14]    *See* Saipem Incident Investigation Report at p. 5-6, attached hereto as Exhibit 3.

However, to avoid any further incidents, the decision was made after the incident to paint the step and surrounding area with a more robust non-skid aggregate. *See id.* at p. 6. Master Morris also confirmed that application of the additional non-skid aggregate on the step would not have been done if Plaintiff's incident would not have occurred. Exh. 2 (Morris Depo) at p. 69:13-15 (Q. You did not because of this accident. A. I went – so I would not have done so if we hadn't had the – the slip.). Such evidence cannot be used to support Plaintiff's negligence claim against Saipem as it is inadmissible as a subsequent remedial measure. *See* Fed. R. Evid. 403, 407; *see also Relf v. Wal-Mart Stores, Inc.*, 49 F.3d 728 (5th Cir. 1995) ("[A] defendant does not open the door to evidence of subsequent remedial measures merely by arguing that it was not negligent or that a dangerous condition did not exist.[11] In fact, to hold otherwise would eviscerate Rule 407, as evidence of subsequent remedial measures would then be admissible whenever a defendant contested its culpability." (citations omitted)).

[15]    *See* Plaintiff's Handwritten Statement, attached as Exhibit 4.

[16]    *See* February 21, 2023 Daily Rig Operations Status Report, attached as Exhibit 5.

Plaintiff also confirmed in his deposition that he did not "attempt to say what was on the steel plating" in that document either. *See* Exh. 1 (Gil Depo) at p. 296:8-15.

[17]    *See* Photograph of Stairs, attached as Exhibit 6; s*ee also* Exh. 1 (Gil Depo) at p. 371:2-372:3 ("Q. And so you're not testifying here that anything on that picture is what made you slip; right? A. Correct.").

[18]    *See* Exh. 1 (Gil Depo) at p. 76:13-16.

[19]    *Id.* at p. 76:8-12.

[20]    *Id.* at p. 211:10-25.

requiring everyone on the vessel to "report any defective or missing equipment, and any spills."[21] However, there is no evidence of anyone reporting any unsafe condition or spill on the step or surrounding area prior to or in connection with this incident.[22] In contrast, Saipem's log of stop card entries relating to slip/trip hazards from December 2022 through February 2023 includes various reports of spills or slipping hazards on the vessel but none pertain to the step or area in question.[23] Plaintiff also admitted for the first time in his deposition that he was talking on a handheld radio when he slipped.[24]  He was holding the radio with both hands—one  holding onto the microphone and the other on the receiver end of the radio—even despite knowing that Saipem's "House Safety Rules" required him to "hold the handrail for support" and acknowledging there were structures near the step for him to hold onto while descending the step.[25]

### III.    Summary Judgment Standard

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal*

---

[21]    Saipem "House Safety Rules" attached as Exhibit 7; *see also* Exh. 1 (Gil Depo) at p. 212:19-213:7.

[22]    Exh. 1 (Gil Depo) at p. 212:9-14.

[23]    *See* Saipem Stop Card Log, attached as Exhibit 8; *see also* Exh. 2 (Morris Depo) at p. 95:16-96:2.

[24]    *See* Exh. 1 (Gil Depo) at p. 242:22-245:4, 340:15-341:9.

[25]    *Id.*

*Practice and Procedure* § 2738 (2d ed. 1983)). "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324, 106 S.Ct. 2548. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for resolution. *See, e.g., id.*; *Little*, 37 F.3d at 1075.

## IV.    Analysis

### A.  33 U.S.C §905(b) is Plaintiff's Exclusive Remedy Against Saipem.

It is well settled that a maritime worker who does not qualify as a Jones Act seaman "is protected only by the LHWCA." *See Becker v. Tidewater, Inc.*, 335 F.3d 376, 386 (5th Cir. 2003), *as revised* (July 24, 2003). The LHWCA establishes a comprehensive federal workers' compensation program that provides maritime workers with medical and disability benefits for work-related injuries and death. 33 U.S.C. § 901 *et seq. See also Howlett v. Birkdale Shipping Co. S.A.*, 512 U.S. 92, 96 (1994). The LHWCA also provides for an action against the vessel on which the employee was working when injured and expressly provides that it is the employee's exclusive remedy against the vessel. *See* 33 U.S.C §905(b).

As the owner of the SANTORINI drillship, Saipem owes limited and narrow duties to maritime workers, such as Plaintiff, under 33 U.S.C. § 905(b). *See Scindia Steam Nav. Co. Ltd. v. De Los Santos*, 451 U.S. 156 (1981). These narrow duties are the "turnover duty," the "active

control duty," and the "duty to intervene." *Id. See also Renteria v. Grieg Star AS*, 168 F.4th 775, 780-81 (5th Cir. 2026) (Summerhays, J.). A breach of one of these three duties results in liability only if it was a "substantial factor" in the injury. *See Howlett v. Birkdale Shipping Co.*, 512 U.S. 92, 98 (1994).

### B. Plaintiff Has No Evidence of a "Hazard" Under Saipem's Active Control.

Saipem does not dispute that it had control over the vessel and the step involved in the incident. As a result, Plaintiff's § 905(b) claims against Saipem fall under the "active control duty." A vessel has a duty to "exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas, or from equipment, under the active control of the vessel . . . ." *Scindia*, 451 U.S. at 167, 101 S.Ct. at 1622. "[L]iability under the active control duty is premised on the presence or existence of a 'hazard' under the active control of the vessel." *Kitchens v. Stolt Tankers B.V.*, 657 F. App'x 248, 251 (5th Cir. 2016) (citing *Pimental v. LTD Canadian Pac. Bul*, 965 F.2d 13, 16 (5th Cir. 1992)).

As the Fifth Circuit held in *Kitchens*, summary judgment is appropriate when a longshoreman fails to produce any evidence of a hazard that allegedly caused him to slip. *See* 657 F. App'x 248, 252 (5th Cir. 2016). Indeed, the undisputed facts in *Kitchens* are nearly identical to this case:

> The record reflects that neither Kitchens nor any of the eye witnesses to the incident observed any type of foreign substance—open, obvious, or otherwise—on the area where Kitchens slipped, before or after the accident. Moreover, subsequent to his fall, Kitchens was unable to gather any direct or circumstantial evidence that there was a hazard on the walkway where he slipped. There was no evidence submitted that any of Stolt's cargo leaked, dripped, or spilled at any time prior to the incident, or that any person tracked any type of slippery substance onto the walkway of the Vessel. Kitchens conceded that it had not rained the night of the incident. Only one witness to the incident observed naturally-occurring moisture due to humidity on the deck. None of the witnesses observed any foreign substances on the deck.

Considering these facts, the court held that "Kitchens failed to show that there was a genuine issue of material fact with respect to his active control claim, thereby entitling [the vessel owner] to summary judgment as a matter of law." *Id. See also Pradeep Patil, Plaintiff-Appellant, v. Amber Lagoon Shipping GmbH & Company; Macs Mar. Carrier Shipping GmbH & Co., Defendants-Appellees.*, No. 21-30004, 2021 WL 3889288, at *5 (5th Cir. Aug. 31, 2021) (same).

The same is true in this case. The undisputed facts establish that:

- Plaintiff traversed the step in question "many times" prior to the incident without an issue.[26]

- Plaintiff walked up and down the step at approximately 6:00 a.m. that morning, and he did not see anything on the step and did not slip.[27]

- Plaintiff used the step on his way to the bathroom immediately before the incident and did so without any issues nor did he see anything on the step.[28]

- The only thing Plaintiff saw after the incident was a mark made by the heel of his foot.[29]

- Plaintiff denied seeing oil or "honey oil" from slickline operations on the step.[30]

- There was no condensation on the deck.[31]

- The post-incident inspection of the step and surrounding area found no foreign substances or hazardous conditions.[32]

---

[26]    *See* Exh. 1 (Gil Depo) at p. 235:23-236:22, 330; 249:8-15, 330:10-330:16.

[27]    *See id.* at p. 330:17-332:1.

[28]    *See id.* at p. 237:3-10, 333:19-25.

[29]    *See id.* at p. 334:21-335:7.

[30]    *See id.* at p. 334:21-335:7, 335:22-336:1.

[31]    *See id.* at p. 335:8-335:14.

[32]    Exh. 2 (Morris Depo) at p. 40:24-41:9, *see also* Exh. 3 (Investigation Report) at p. 5-6.

- The step had a "shipyard finish, which has a fine non-slip."[33]

- The step was in good condition and regularly inspected.[34]

- Plaintiff's hand-written statement does not mention any hazard or substance that he purportedly slipped on.[35]

- Plaintiff cannot say that anything depicted in the photograph taken as part of the investigation made him slip.[36]

- Saipem's log of stop card entries relating to slip/trip hazards from December 2022 through February 2023 does not include any reports for the step or area in question.[37]

- Plaintiff was a highly trained and experienced offshore worker who was familiar with the conditions and potential risks of offshore employment.[38]

Based on this complete lack of evidence regarding what allegedly made Plaintiff slip, any conclusory statement by Plaintiff or his expert regarding what caused him to slip is "unsupported speculation" that is insufficient to defeat a motion for summary judgment. *See Kitchens*, 657 F. App'x 248 at 252 ("Kitchens' conclusion that he slipped 'because of accumulation of veg oil or other foreign substances on the walkway, the presence of water on the walkway that was not the result of dew or rain, the lack of a nonskid on the walkway, or some combination of these factors' is nothing more than unsupported speculation and therefore insufficient to defeat a motion for summary judgment."). Accordingly, summary judgment is warranted as a matter of law.[39]

---

[33]   Exh. 2 (Morris Depo) at p. 30:1-10.

[34]   *See id.* at p. 47:18-48:11; *see also* Exh. 3 (Investigation Report) at p. 5-6.

[35]   *See* Exh. 4 (Plaintiff's Handwritten Statement).

[36]   *See* Exh. 6 (Photograph of Stairs); *see also* Exh. 1 (Gil Depo) at p. 371:2-372:3 ("Q. And so you're not testifying here that anything on that picture is what made you slip; right? A. Correct.").

[37]   *See* Exh. 8 (Saipem Stop Card Log); *see also* Exh. 2 (Morris Depo) at p. 95:16-96:2.

[38]   *See* Exh. 1 (Gil Depo) at p. 76:13-16.

[39]   A vessel owner only has a duty to protect longshoreman from unreasonably hazardous conditions that it acquired actual knowledge of. *See Thompson v. Cargill, Inc.*, 585 F. Supp. 1332, 1334 (E.D. La.

### C. Lack of or Insufficient Non-Skid is Not an "Unreasonably Dangerous Working Condition" Under § 905(b).

Plaintiff may argue that the alleged absence of or insufficient non-skid on the step was a hazardous condition that caused him to slip. Tellingly, Plaintiff's liability expert report primarily discusses non-skid surfaces and opines that Saipem allegedly failed to provide Plaintiff with a reasonably safe step because it was "not coated with a non-slip surface." Such an argument is unfounded as a matter of fact and law.

Indeed, Saipem took delivery of the SANTORINI from the shipyard in November 2021, and Master Morris testified that the step had a "shipyard finish, which has a fine non-slip" that "is inherently part of the paint."[40] But even assuming there was evidence that the step did not contain a non-skid coating or that it was somehow insufficient, the Fifth Circuit has routinely recognized in § 905(b) cases that: "this court has not held that the lack of a non-skid surface alone is sufficient to give rise to a finding of liability under the active control duty" or the turn over duty. *Kitchens*, 657 F. App'x 248 at 251. *See also, e.g.*, *Thompson v. Cargill, Inc.*, 585 F. Supp. 1332, 1334 (E.D. La. 1984) ("Furthermore, it would be ludicrous to suggest that the vessel owner had a duty to resurface the portions of the vessel which it turned over to the stevedore. The Court takes judicial notice of the fact that experienced and expert stevedores have frequent occasion to perform their work on the decks of vessels which may not have non-skid surfaces.").

---

1984). Because there is no evidence of a hazard, there is certainly no evidence that Saipem had actual knowledge of any alleged hazard. *See* Exh. 2 (Morris Depo) at p. 95:16-96:2; *see also* Exh. 1 (Gil Depo) at p. 333:12-333:18.

Saipem contends that the duty to intervene is inapplicable under the facts of this case. However, to the extent it is applicable, Saipem is entitled to summary judgment for these same reasons, because it must have actual knowledge of a hazard to be liable under the duty to intervene. *See Scindia*, 451 U.S. at 175-76.

40    Exh. 2 (Morris Depo) at p. 30:1-10, 46:18-25.

"To allow longshoremen to bring a negligence action against a vessel without non-skid surfaces would be paramount to allowing them to proceed on a theory of unseaworthiness, a right which was abrogated by the 1972 amendments to the LHWCA." *Verret v. Dean Boats, Inc.*, 87–1237, 1989 WL 81274, at \*9 (E.D. La. July 20, 1989) (internal quotations and citations omitted). Accordingly, any argument by Plaintiff regarding non-skid on the step must fail and is insufficient to defeat summary judgment in this case. *See Hamilton v. Targa Transp. LLC*, No. 4:16-CV-2614, 2018 WL 2010294, at \*6 (S.D. Tex. Apr. 30, 2018) ("Mr. Woods's conclusions and averments that Targa should have ensured all of its decks were covered with non-skid material and warned Plaintiff that such material was absent from at least certain parts of the barge, is in direct contravention of nearly thirty years of consistent contrary jurisprudence on the subject.").

## V.    Conclusion

Plaintiff's exclusive remedy against Saipem is under the LHWCA, 33 U.S.C §905(b). However, Plaintiff is unable to prove an essential element of his § 905(b) negligence claims against Saipem because there is no evidence of a "hazard" under SCPM's control that caused him to slip. Further, the Fifth Circuit has routinely held that a purported lack of or insufficient non-skid on the deck of a vessel is not a hazard for purposes of the limited § 905(b) duties provided in *Scindia Steam Nav. Co. Ltd. v. De Los Santos*, 451 U.S. 156 (1981). Thus, summary judgment is appropriate as a matter of fact and law, and Plaintiff's claims against Saipem should be dismissed in their entirety.