UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| MARIO GIL | CIVIL ACTION NO.: 6:24-cv-00201 |
| VERSUS | JUDGE SUMMERHAYS |
| ABC INSURANCE COMPANY, ENI US OPERATING CO., INC., and SAIPEM AMERICA, INC. | MAGISTRATE JUDGE AYO |

**MEMORANDUM IN SUPPORT - MOTION FOR SUMMARY JUDGMENT (Fed. R. Civ. P. 56) ON ALL CLAIMS FILED AGAINST ENI US OPERATING CO., INC.**

RESPECTFULLY SUBMITTED,

*/s/ Christopher M. Hannan*
CHRISTOPHER M. HANNAN (#31765)
STEPHEN B. REYNOLDS, JR. (#41384)
JONES WALKER LLP
201 St. Charles Avenue, Suite 5100
New Orleans, Louisiana 70170
Telephone: (504) 582-8353
Facsimile: (504) 589-8353
Email: channan@joneswalker.com
          sreynolds@joneswalker.com

***Counsel for Defendant ENI US Operating Co. Inc***

i

#111574906v5

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... ii

TABLE OF AUTHORITIES ................................................................................................... iii

MEMORANDUM ...................................................................................................................... 1

I.      LR 56.1 MATERIAL FACTS NOT GENUINELY DISPUTED AND
        CITATIONS ...................................................................................................................... 1
        A.      General Contractual and Operational Context ........................................................ 1

        B.      The February 20, 2023 Incident ........................................................................... 5

II.     LEGAL STANDARD ......................................................................................................... 6
        A.      Summary Judgment Standard ................................................................................. 6

        B.      Independent Contractor Non-Liability Principles .................................................. 7

        C.      Time Charterer Non-Liability for Non-Controlled Vessel
                Condition/Operations, including as to alleged §905(b) Vessel
                Negligence ............................................................................................................... 9

III.    ANALYSIS - LR 56.1 LEGAL BASIS FOR SUMMARY JUDGMENT;
        FURTHER MATERIAL FACTS NOT GENUINELY DISPUTED AND
        CITATIONS ...................................................................................................................... 11
        A.      ENI US has no Liability under Maritime Independent Contractor
                Principles ............................................................................................................... 11

                i.      Relevant Contracts .................................................................................. 11

                        1.      ENI US/Halliburton Contract ....................................................... 11

                        2.      Halliburton/ATS Contract ............................................................. 13

                        3.      ENI US/Saipem Drilling Contract/Time Charter
                                (DC/TC) ......................................................................................... 13

                ii.     ENI US is Entitled to Summary Judgment under Well-
                        Established Independent Contractor Jurisprudence ................................ 15

        B.      Separately, and Equally Dispositive, ENI US Cannot be Liable as a
                Matter of Law under Principles of Time Charter Non-Liability ........................... 19

        C.      Plaintiff has no Viable Claim against ENI US under
                §905(b)/*Scindia* ................................................................................................... 24

IV.     CONCLUSION ................................................................................................................. 24

#111574906v5

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ainsworth v. Shell Offshore, Inc.*,
829 F.2d 548 (5th Cir. 1987) .....................................................................................................8

*Alfred v. Hornbeck Offshore Servs.*,
2005 U.S. Dist. LEXIS 3325 (E.D. La. Feb. 22, 2005); 2005 WL 517493 .......................23, 24

*Barron v. BP Am. Prod. Co.*,
590 Fed. Appx. 294 (5th Cir. 2014)...............................................................................22, 24

*Callahan v. Gulf Logistics, L.L.C.*,
456 Fed. Appx. 385 (5th Cir. 2011).....................................................................................20

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).............................................................................................................6

*Chiasson v. Brand Energy Sols., LLC*,
452 F. Supp. 3d 472 (W.D. La. 2020) (Summerhays, J.) .............................................7, 15, 16

*Coleman v. BP Exploration & Prod.*,
2020 U.S. Dist. LEXIS 199396 (S.D. Tex. Oct. 7, 2020); 2020 WL 6292491 .......................12

*Dukes v. ZafiroMarine*,
No. 15-4948, R. Doc. 48, 2017 U.S. Dist. LEXIS 63966 (E.D. La. Apr. 27,
2017) .................................................................................................................................4

*Fruge v. Parker Drilling Co.*,
337 F.3d 558 (5th Cir. 2003) ..............................................................................8, 18, 19

*Gantt v. Seadrill Ams., Inc.*,
360 F. Supp. 3d 402 (E.D. La. 2018)..........................................................................4, 16, 17

*Graham v. Amoco Oil Co.*,
21 F.3d 643 (5th Cir. 1994) ..................................................................................................8

*Grammer v. Patterson Servs., Inc.*,
860 F.2d 639 (5th Cir. 1988) .................................................................................................8

*Grand Famous Shipping Ltd. v. Port of Houston Auth.*,
574 F. Supp. 3d 438 (5th Cir. 2022) .......................................................................................9

*Grogan v. Seaboard Marine, Ltd.*,
2022 U.S. Dist. LEXIS 36102 (S.D. Tex. Mar. 1, 2022); 2022 AMC 69; 2022
WL 605799 ................................................................................................10, 20, 21, 23, 24

#111574906v5

*Hudson v. Schlumberger Tech. Corp.*,
452 Fed. Appx. 528 (5th Cir. 2011)................................................................10, 19, 20, 24

*Kerr-McGee Corp. v. Ma-Ju Marine Servs., Inc.*,
830 F.2d 1332 (5th Cir. 1987) ...............................................................................10, 22, 24

*Lindsey v. Sears Roebuck and Co.*,
16 F.3d 616 (5th Cir.1994) ...................................................................................................7

*Menard v. LLOG Expl. Co., LLC*,
259 F. Supp. 3d 475 (E.D. La. 2017)..............................................................7, 17, 18, 21, 22

*Moore v. Phillips Petroleum Co.*,
912 F.2d 789 (5th Cir. 1990) ............................................................................................9, 19

*Oceaneering Int'l, Inc. v. Cross Logistics, Inc.*,
Case No. H-11-3447, R. Doc. 79, 2014 U.S. Dist. LEXIS 74624 (S.D. Tex.
June 2, 2014)......................................................................................................................8, 13

*Payano v. Envtl., Safety & Health Consulting Servs.*,
2018 U.S. Dist. LEXIS 170061 (E.D. La. Oct. 2, 2018); 2018 WL 4739670
*aff'd* 778 Fed. Appx. 313 (5th Cir. 2019)..........................................................................10, 24

*Rakiep v. Hess Corp.*,
2024 U.S. Dist. LEXIS 180750 (E.D. La. Oct. 3, 2024); 2024 WL 4393168 ........................12

*Renteria v. Grieg Star AS*,
168 F.4th 775 (5th Cir. 2026) ...........................................................................................1, 24

*Scindia Steam Nav. Co., Ltd. v. De Los Santos*,
451 U.S. 156 (1981)......................................................................................................1, 24, 25

*Skinner v. Schlumberger Tech. Corp.*,
655 F. App'x 188 (5th Cir. 2016).........................................................................................8, 18

*Trico Marine Operators v. Falcon Drilling Co.*,
116 F.3d 159 (5th Cir. 1997) .................................................................................................2

*Wilkins v. P.M.B. Sys. Eng'g, Inc.*,
741 F.2d 795 (5th Cir. 1984) ................................................................................................18

**Statutes**

33 U.S.C. §902(21) ......................................................................................................................24

33 U.S.C. §905(b) .........................................................................................1, 9, 10, 20, 22, 23, 24

MSA 2018-001................................................................................................................................2

#111574906v5

**Other Authorities**

Fed. R. Civ. P. 56...............................................................................................................1, 6, 7, 19

U.S. District Court, Western District of Louisiana, Local Rule 56.1 .......................................1, 11

#111574906v5

**MEMORANDUM**

Defendant ENI US Operating Co., Inc. ("ENI US") respectfully move**s** for summary judgment pursuant to Federal Rule of Civil Procedure 56, dismissing all claims asserted by Plaintiff against ENI US pursuant to the independent contractor defense and/or because Plaintiff has no viable claim against ENI US as time charterer under the exclusively applicable and narrow *Scindia* duties pursuant to 33 U.S.C. §905(b).[1] The undisputed summary judgment record establishes that Plaintiff was employed by an independent contractor (Advanced Tool & Supply, LLC, "ATS"); performed work controlled by that independent contractor through its upstream independent contractor (Halliburton Energy Services, Inc., "Halliburton") and allegedly sustained an unwitnessed injury aboard the drillship SANTORINI ("Vessel") owned and operated by another independent contractor Saipem (Portugal) Comercio Marítimo, SU, LDA ("Saipem"). Plaintiff's own testimony confirms that ENI US neither directed nor controlled the work/operation at issue, nor did it exercise control over the vessel or the area where the incident allegedly occurred. Under well-settled Fifth Circuit maritime law regarding non-liability of a principal for actions of independent contractors as well as non-liability of time charterers for vessel-related incidents, ENI US is entitled to dismissal of all Plaintiff's claims against it as a matter of law.

I.      **LR 56.1 MATERIAL FACTS NOT GENUINELY DISPUTED AND CITATIONS**

      **A.  General Contractual and Operational Context**

This case arises out of a February 20, 2023, unwitnessed slip-and-fall incident aboard Saipem's SANTORINI drillship. At all relevant times, Plaintiff Mario Gil was employed exclusively by ATS, a non-party independent contractor providing surface well-testing equipment

---

[1] *See* Defendants' previously filed Joint Motion by for Partial Summary Judgment on Seaman Status and for Dismissal of Any Claims Arising Under the Jones Act, General Maritime Law, and State Law (R. Doc. 51), establishing Plaintiff is not a seaman and restricting claims against ENI US/Saipem to vessel negligence under §905(b) and the three *Scindia* duties. *See Renteria v. Grieg Star AS*, 168 F.4th 775, 780 (5th Cir. 2026) (Summerhays, J, sitting by designation) ("*Scindia Steam Nav. Co., Ltd. v. De Los Santos*[, 451 U.S. 156, 167-78 (1981)] outlined three narrow duties shipowners owe to longshoremen: (1) the turnover duty, (2) the active control duty, and (3) the duty to intervene.").

1

#111574906v5

and personnel in connection with offshore well completion operations.[2] Plaintiff is an experienced offshore worker who had more than a decade of offshore experience prior to joining ATS.

ATS was a subcontractor to Halliburton, which was retained by ENI US as an independent contractor to perform various well-testing services. The SANTORINI was owned, crewed, and operated by Saipem, and was working for ENI US pursuant to a Drilling Contract for use of the SANTORINI (functionally a time charter to ENI US[3]) at the time of Plaintiff's alleged incident.

The three relevant contract sets confirm that ATS, Halliburton and Saipem were all independent contractors of ENI US with respect to the facts of Plaintiff's alleged injury and the operations underway aboard the SANTORINI at the time of the alleged incident: (1) ENI US/Halliburton Contract[4]; (2) Halliburton/ATS Contract[5]; and (3) ENI US/Saipem Drilling Contract/Time Charter ("DC/TC")[6] together with a "Bridging Document"[7] allocating certain responsibilities between the parties.  Each of these contracts (as detailed in Section III.A.i *infra*) establishes that ATS (as subcontractor to ENI US's Halliburton) and Saipem were all independent contractors of ENI US, over which ENI US did not exercise any operational control.

Plaintiff was not employed by ENI US or Saipem, was not a member of the vessel's crew, and was working aboard the SANTORINI solely in his capacity as an ATS employee for an ATS job as a subcontractor of Halliburton. Plaintiff's testimony confirms that ATS controlled the work

---

[2] *See* Exhibit 1, Ex. 1, Deposition of Mario Gil, p. 94:3-25; 220:6-12.

[3] *See Trico Marine Operators v. Falcon Drilling Co*., 116 F.3d 159, 162 (5th Cir. 1997) ("[A] contract for the use of a drilling vessel [constitutes] a charter agreement for a vessel and … the parties to that agreement [can be described] as rig owner and rig charterer." (citing *Fontenot v. Mesa Petroleum Co.,*791 F.2d 1207 (5th Cir.1986) and *Lewis v. Keyes* 303,834 F. Supp. 191, 195 (S.D.Tex.1993) ("Daywork Drilling Contract" was a charter agreement)).

[4] Exhibit 2, ENI-SANTORINI_000609-669 (Master Service Agreement 2018-001, ENI-SANTORINI_000627-669; together with Contract #5000020493, ENI-SANTORINI_609-626, incorporating MSA 2018-001).

[5] Exhibit 3, ENI-SANTORINI_000670-718.

[6] Exhibit 4, SPCM 000072-146.

[7] Exhibit 5, SPCM 000034-39.

#111574906v5

he was performing in relation to the facts of his alleged incident; and that ENI US personnel were not directing or involved in those operations.[8] Plaintiff likewise testified that the Saipem driller was generally in charge of all rig floor operations on the SANTORINI, including those that Plaintiff was performing for ATS: "I mean, he's pretty much the man in charge; right? Everything falls through him because it's his rig floor."[9] Nonetheless, Plaintiff also confirmed that with respect to the operation of ATS's downhole tool, he was in charge of such operations.[10]

This operational hierarchy aboard the *SANTORINI* is further confirmed by the testimony of the vessel's master, Paul Morris, who explained that Saipem retained authority over the vessel, its crew, and shipboard conditions, including the step and area of Plaintiff's alleged incident:

> [Q]. When it comes specifically to the facility construction itself, it is [Saipem's] responsibility based on your understanding to ensure that the facilities are safely constructed, agree?
>
> A. Yes. That's fair.
>
> Q. … When it comes to facilities, things such as stairs and steps would be considered part of the facility/parts of the ship, agree?
>
> A. Yes. Agreed.
>
> Q. So you would agree with me then that [Saipem] has the responsibility to make sure that steps and stairways are constructed in a safe manner, correct?
>
> A. Yes, that's correct.
> \*\*\*
> [Q]. [I]f there were a substance in the area outside the drill floor, whose responsibility would it be to make sure that got cleaned up?
>
> A. Well, if you go by the order of the book, then it's [Saipem].[11]

---

[8] Ex. 1, pp. 97:10-14; *see also* p. 96:8-25 (explaining that ATS was "umbrellaed" under Halliburton for the work involving ATS tools/personnel); p. 350:8-10.

[9] *Id*. at p. 218:9-11.

[10] *Id*. at p. 219:23-25; p. 231:13-15.

[11] Exhibit 6, Deposition of Paul Morris, p. 19:10-24; p. 94:21-25; p. 95:1; p. 20:6-11(Saipem responsible for non-slip).

#111574906v5

Likewise, Master Morris confirmed that" part of the duties of the [Saipem] floorman is to ensure that the decks are maintained to a good standard of housekeeping."[12]

Moreover, the ENI US/Saipem "Bridging Document" provides a matrix dividing responsibilities between Saipem and ENI US for specified drilling/vessel operations on the SANTORINI that explicitly allocates responsibility to Saipem, not ENI US,[13] for the conditions/ operations that allegedly contributed to Plaintiff's incident, including specifically regarding:

- SANTORINI "facility design" vis-à-vis the intermediate step/deck;[14]

- "[c]onduct[ing], manag[ing], and communicat[ing] the hazards analysis (facility level) for equipment, materials or processes owned or contracted by the Contractor [i.e. SANTORINI and its associated components/equipment]" vis-à-vis shipboard operations;[15]

- "[o]perating procedures that provide instructions for conducting safe …activities and address[ing] equipment or processes owned or contracted by [Saipem], and "develop[ing] [Saipem's] own Operating Procedures to maintain safe operations";[16]

- " [c]ontrol[ling] the presence, entrance and exit of personnel in [Saipem's] operating area. (on the rig)";[17]

- "[e]stablish[ing] responsibility and authority for stop work when an unsafe condition or act could result in an undesirable event, or when witnessing imminent risk, or danger to people, equipment, and the environment."[18]

The "Bridging Document" further specifies the SANTORINI Master "**is ultimately responsible for safety and integrity of the Ship and Personnel…**[and] has ultimate authority on board…"[19]

---

[12] *Id*. at p. 27:18-20; p. 96:13-23; 97:1-2.

[13] *See Dukes v. ZafiroMarine*, No. 15-4948, R. Doc. 48, 2017 U.S. Dist. LEXIS 63966 (E.D. La. Apr. 27, 2017) (summary judgment dismissing claims against time charterer under Bridging Document allocating responsibilities to vessel owner); *Gantt v. Seadrill Ams., Inc*., 360 F. Supp. 3d 402, 411 (E.D. La. 2018) (same).

[14] *See* Ex. 5, SPCM 000034 (Chart at "Element 2").

[15] *Id*. (Chart at "Element 3").

[16] *Id*., SPCM 000035 (Chart at "Element 5").

[17] *Id*., SPCM 000036 (Chart at "Element 6").

[18] *Id*., SPCM 000037 (Chart at "Element 14").

[19] *Id*., SPCM 000038 (Chart at "Element 15") (emphasis added).

#111574906v5

Likewise, the DC/TC confirms Saipem's general responsibility "to provide safe working conditions" on the SANTORINI;[20] and specifies in "Special Conditions," "Clause 8 HSE REQUIREMENTS," that Saipem "shall be responsible for the Health, Safety, Environment and Public Safety management of the work, at his own cost," including the duty to "take, at its expense, all actions necessary to protect all persons from any exposure to, or hazard from, hazardous material and [to] adopt all measures needed to reduce, as low as reasonably possible, any injury or damage to people or property."[21] Clause 6.5 of the DC/TC further confirms Saipem's responsibility for vessel operations and shipboard personnel safety:

> **Clause 6.5 <u>Scope of Operations, moves of the Drilling Unit</u>**… CONTRACTOR [Saipem] shall be responsible for the moving or towing of the [SANTORINI]… and for the overall direction of moving operations and **such operations onboard the [SANTORINI] as may be necessary for the safety of the [SANTORINI]**...[22]

Thus, at all relevant times, Plaintiff was aboard the *SANTORINI* solely in his capacity as an ATS employee, performing work directly controlled by ATS in an area of the vessel under Saipem's control and oversight, under the DC/TC and "Bridging Document" pursuant to which Saipem retained responsibility for the relevant vessel conditions/structure involved in Plaintiff's alleged incident, and operational oversight/housekeeping responsibility for the area of the incident.

### B. The February 20, 2023 Incident

According to Plaintiff, on February 20, 2023, at approximately 11:30 a.m., Plaintiff left the rig floor to use a portable restroom located on the port-side transfer deck of the SANTORINI while he was working with other non-ENI US personnel on the SANTORINI rig floor running tests through ATS's surface test tree equipment.[23] To reach the restroom, Plaintiff traversed a single

---

[20] Ex. 4, Cl. 12.3.2, at SPCM 106.

[21] *Id*. at SPCM 000078.

[22] *Id*. at SPCM 00098-99 (emphasis added).

[23] *See* Ex. 1, pp. 226-227; 230-231; p. 334:15-18.

-5-

intermediate step between the rig floor and the transfer deck. Plaintiff had successfully traversed the same step without any issue shortly before the alleged incident (i.e. on his way to the port-o-let), and had done so "many times" previously during his hitch, including earlier that morning.[24] When returning from the restroom and descending the step, however, Plaintiff was holding a radio and did not use available handholds located adjacent to the step.[25] Plaintiff asserts that once he stepped down, his right foot slipped resulting in the incident and alleged injuries at issue

Plaintiff unequivocally testified he *did not see anything* on the step before or after he slipped;[26] and (referencing a post-incident photo) that he has "no idea" what any alleged substances in the photo were, and **could not testify** "that anything on that picture is what made [him] slip."[27]

Plaintiff likewise confirmed that the ENI US company man was not in the area of the rig floor or the area of the incident at the time of and immediately after the alleged incident, as Plaintiff had to leave the rig floor to report the incident to the ENI US company man (because the company man was away from the rig floor in the living quarters).[28]

## II.    LEGAL STANDARD

### A.  Summary Judgment Standard

Summary judgment is mandated when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[29]  This Court has summarized the governing summary judgment principles:

---

[24] *See id.*, at p. 235:23-25; 236:13-22; 237:3-9; p. 249:8-15; 255:3-7 ("[Y]ou didn't slip on either the floor or on the step when you were walking up to go to the porta-potty; correct? A No."); p. 330:10-25; 331:1-25; 332:1-22.

[25] *Id.* at p. 243:13-25; 244:1-14.

[26] *Id.* at p. 333:24-25; 334:1-24; 335:1-7, 22-25; 336:1; 340:6-13.

[27] *Id.* at p. 371:18-20, 25; 372:1-3.

[28] *Id.* at p. 275:4-20

[29] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*) (*per curiam*).

-6-

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." [Fed. R. Civ. P. 56(a)]. A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party… As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.

*Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir.1994)…

[T]he court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached…**Rule 56 mandates the entry of summary judgment…against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof**."[30]

Plaintiff bears the burden of proof at trial, and thus ENI US need only show that there is no evidence sufficient to warrant a trial on Plaintiff's claims.

This Court and numerous others have routinely granted summary judgment dismissal of claims – and the Fifth Circuit has routinely affirmed such dismissals - under the independent contractor defense and/or time-charterer non-liability principles, as detailed *infra* in §§III.A-B.

### B. Independent Contractor Non-Liability Principles

Under well-settled Fifth Circuit maritime law (identical to Louisiana law[31]), a principal is not liable for injuries sustained by an employee of an independent contractor unless the principal either (1) engages in an ultrahazardous activity or (2) retains or exercises operational control over

---

[30] *Chiasson v. Brand Energy Sols., LLC,* 452 F. Supp. 3d 472, 476 (W.D. La. 2020) (Summerhays, J.) (certain quotations/citations omitted; emphasis added).

[31] "Under both Louisiana law and general maritime law, the general rule is that a principal is not liable for the acts of an independent contractor—unless, *inter alia*, the principal retains or exercises operational control over the independent contractor's actions…There is no appreciable difference between federal maritime law and Louisiana law on this issue." *Menard v. LLOG Expl. Co., LLC*, 259 F. Supp. 3d 475, 481 n. 26 (E.D. La. 2017).

#111574906v5

the manner and methods of the independent contractor's work.[32] The Fifth Circuit has long held that "drilling operations are not ultrahazardous,"[33] and thus that exception does not apply here.

As for the operational control exception, the Fifth Circuit has consistently held that operational control exists only where the principal retains control over the "operative detail" or "manner or methods" of the work.[34] Stated differently, operational control requires direct supervision over the "step-by-step process" of accomplishing the work such that the contractor is not free to perform the work in its own way.[35] Under applicable law, it is **not enough** that a principal retains some general right to inspect work, monitor progress, attend safety meetings, or requires compliance with safety rules; or has a company representative (or company-man) on site.[36] Unless the principal takes on an active role in directing how the work is performed, the principal will not be liable as a matter of law under the independent-contractor defense.

Fifth Circuit courts applying maritime law routinely dismiss claims when the independent contractor defense applies on the undisputed facts: "[T]he Fifth Circuit 'has consistently held that a principal who hires independent contractors over which he exercises no operational control has no duty to discover and remedy hazards created by its independent contractors,' and accordingly cannot be held vicariously liable for the torts of the independent contractors.'[37]

---

[32] *Skinner v. Schlumberger Tech. Corp.*, 655 F. App'x 188, 192 (5th Cir. 2016); *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 549–50 (5th Cir. 1987); *Grammer v. Patterson Servs., Inc.*, 860 F.2d 639, 642 (5th Cir. 1988); *Graham v. Amoco Oil Co.*, 21 F.3d 643, 647 (5th Cir. 1994).

[33] *Ainsworth*, 829 F.2d at 550 (citing *Smith v. Shell Oil Co.*, 746 F.2d 1087 (5th Cir. 1984); *Knott v. Frank's Casing Crew & Rental Tools, Inc.*, 468 So. 2d 798 (La. App. 1st Cir.1985); *Franklin v. Oilfield Heavy Haulers*, 478 So. 2d 549 (La. App. 3d Cir.1985)).

[34] *Skinner*, 655 F. App'x 188 at 192.

[35] *Fruge v. Parker Drilling Co.*, 337 F.3d 558, 564 (5th Cir. 2003).

[36] *Grammer*, 860 F.2d at 643-45; *Fruge,* 337 F.3d at 564; *Ainsworth*, 829 F.2d at 550-51; *Graham*, 21 F.3d at 646-47.

[37] *Oceaneering Int'l, Inc. v. Cross Logistics, Inc.*, Case No. H-11-3447, R. Doc. 79 at p. 54-55, 2014 U.S. Dist. LEXIS 74624, *62 (S.D. Tex. June 2, 2014) (quoting *Wilkins v. P.M.B. Sys. Eng'g, Inc.*, 741 F.2d 795, 800 (5th Cir. 1984)).

#111574906v5

### C. Time Charterer Non-Liability for Non-Controlled Vessel Condition/Operations, including as to alleged §905(b) Vessel Negligence

Closely related to, but separate from, these maritime independent contractor principles, well-established Fifth Circuit caselaw has consistently rejected claims against time charterers without contractual/factual operational control of the vessel or shipboard activities underway at the time of an incident. Simply put, "Fifth Circuit precedent militates in favor of circumscribed time-charterer liability."[38] Fifth Circuit law is clear that "a time-charterer is not liable [for injuries caused by a vessel's alleged negligence] unless the cause of the harm is within the charterer's traditional sphere of control and responsibility or has been transferred thereto by the clear language of the charter agreement."[39] "The time charterer's duties are different from the vessel owner's duties [and t]he vessel owner remains responsible for the seaworthiness of the vessel, dangerous conditions on board, navigational errors by the pilot and negligence by the crew, and a reasonably safe means of access for those boarding or leaving the vessel."[40] Instead, "the traditional spheres of activity in which a time charterer exercises control and thus owes a duty include choosing the vessel's cargo, route, and general mission, [and] the specific time in which the vessel will perform its assignment."[41] "A time charterer owes _no duty_ beyond these spheres" unless the parties clearly and unambiguously "vary the traditional assignment of control by contract or custom.'"[42]

In sum, "a time charterer will only be liable for its responsibilities in relation to its sphere of control over the commercial activities of the vessel…rather than the condition of the vessel

---

[38] _Grand Famous Shipping Ltd. v. Port of Houston Auth._, 574 F. Supp. 3d 438, 447 (5th Cir. 2022).

[39] _Moore v. Phillips Petroleum Co._, 912 F.2d 789, 791 (5th Cir. 1990) (quoting _Kerr-McGee Corp. v. Ma-Ju Marine Servs., Inc._, 830 F.2d 1332, 1343 (5th Cir. 1987)).

[40] _Moore,_ 912 F.2d at 792.

[41] _Id._ at 791.

[42] _Grand Famous,_ 45 F.4th at 806 (quoting _Hodgen v. Forest Oil Corp._, 87 F.3d 1512, 1520 (5th Cir. 1996)).

-9-

under control of the vessel owner," absent specific contractual modification to the contrary.[43] Thus, when the terms of a time charter contractually assign operational control, management, inspection, and safe maintenance/condition of the vessel *to the vessel owner*, the time charterer will not be liable for any incident resulting from conditions on the vessel.[44] Likewise, "when[t]he language of the time charter is unambiguous [the owner, and not the time charterer is] responsible for keeping the ship seaworthy and in good condition."[45]

These time charterer non-liability principles apply identically to vessel negligence claims under 33 U.S.C. §905(b) like Plaintiff's in this case.[46] "The scope of vessel negligence for a time charterer under §905(b) is even more limited than that for a vessel owner[; and] the Fifth Circuit has held that a time-charterer is not liable under 905(b) unless the cause of the harm is within the charterer's traditional sphere of control and responsibility or has been transferred thereto by the clear language of the charter agreement."[47]

---

[43] *Hudson v. Schlumberger Tech. Cor*p., 452 Fed. Appx. 528, 537 (5ᵗʰ Cir. 2011).

[44] *Id*.

[45] *Grogan v. Seaboard Marine, Ltd*., 2022 U.S. Dist. LEXIS 36102, *5 (S.D. Tex. Mar. 1, 2022); 2022 AMC 69; 2022 WL 605799.

[46] As shown in Defendants' previously filed Joint Motion for Partial Summary Judgment (R. Doc. 51) Plaintiff is not a seaman, and his claims are thus exclusively limited to vessel negligence under the Longshore Harbor Workers Compensation Act ("LHWCA"), 33 U.S.C. §905(b). Under well-established Fifth Circuit law, "[w]here a defendant is subject to suit for [vessel] negligence under [§90]5(b) solely by reason of having been the time-charterer of the vessel on which the LHWCA-covered plaintiff was injured in the course of [his] employment, the duties and responsibilities against which the claim of the defendant's negligence must be measured are necessarily limited to those which arise out of and are founded on the relationship which the time-charter establishes between the defendant and the vessel. [S]uch duties and responsibilities of the time-charterer, and its consequent potential negligence, [are not] otherwise any greater in the context of a [§90]5(b) suit than in other contexts, [because] [§90]5(b) did not expand negligence liability."  *Kerr-McGee Corp. v. Ma-Ju Marine Servs., Inc*., 830 F.2d 1332, 1339 (5th Cir. 1987).

[47] *Payano v. Envtl., Safety & Health Consulting Servs*., 2018 U.S. Dist. LEXIS 170061, *16-17 (E.D. La. Oct. 2, 2018); 2018 WL 4739670 *aff'd* 778 Fed. Appx. 313 (5ᵗʰ Cir. 2019) (granting summary judgment dismissing §905(b) claims against time charterer).  *See also Hudson v. Schlumberger Tech. Corp*., 452 Fed. Appx. 528, 537-38 (5ᵗʰ Cir. 2011) (affirming summary judgment dismissal of §905(b) vessel negligence claim against time charterer because "the contract [did] not alter [the time charterer's] traditional sphere of control over the commercial activities of the vessel"; the charter party agreement left operational control with the vessel owner and nothing in the charter party rendered the charterer "responsible for inspecting the vessel for safety purposes").

-10-

III.    **ANALYSIS - LR 56.1 LEGAL BASIS FOR SUMMARY JUDGMENT; FURTHER MATERIAL FACTS NOT GENUINELY DISPUTED AND CITATIONS**

A.  **ENI US has no Liability under Maritime Independent Contractor Principles**

Under well-settled Fifth Circuit maritime precedent applying the independent contractor defense, the summary judgment record confirms ENI US had no control over the conditions or operations underway aboard the SANTORINI at the time of the alleged incident. This conclusion is confirmed by the contractual terms governing the allocation of work, safety, and operational responsibilities aboard the SANTORINI. Conversely, ATS and/or Saipem each retained significant operational control and authority over their own tasks, personnel, and equipment, including the operations/conditions/areas implicated in Plaintiff's claims.

i.    **Relevant Contracts**

The relevant contractual terms foreclose any finding of operational control by ENI US. The DC/TC places responsibility for vessel operations, crew, and shipboard safety squarely on Saipem; while the ENI US/Halliburton contract and Halliburton/ATS subcontract assign execution of the work, supervision of personnel, and control of Plaintiff's work to ATS. ENI US's contractual role is limited to coordination and result-oriented oversight - precisely the type of contractual structure the Fifth Circuit has repeatedly held cannot, as a matter of law, establish operational control and that warrants application of the independent contractor defense and.

1.    **ENI US/Halliburton Contract**

The ENI US/Halliburton Contract expressly establishes that Halliburton is an independent contractor of ENI US, along with ATS as part of Halliburton's "Group":

**35. INDEPENDENT CONTRACTOR**

35.1 CONTRACTOR [Halliburton] shall be an independent CONTRACTOR with respect to the performance of the SERVICE with exclusive control over its EQUIPMENT, materials, and CONTRACTOR PERSONNEL [defined as "personnel to be furnished by CONTRACTOR GROUP [defined in pertinent part to include "SUBCONTRACTORS," in turn defined as " any person, including any

-11-

vendor or supplier, with whom CONTRACTOR has entered into any contract to provide any such part of the SERVICE as detailed in the scope of work of the CONTRACT," thus including ATS] in connection with the provision of the [ENI US/Halliburton] CONTRACT"] and neither CONTRACTOR nor anyone employed by CONTRACTOR shall be deemed for any purpose to be the employee, agent, servant, borrowed servant, or representative of COMPANY [ENI US] in the performance of any work or service hereunder.

35.2 COMPANY shall have no direction or control of CONTRACTOR, CONTRACTOR PERSONNEL or SUBCONTRACTORS [i.e. ATS]. The actual performance and supervision of the SERVICE shall be by CONTRACTOR, but COMPANY or its COMPANY REPRESENTATIVE shall have full and complete access to the operations to determine whether the SERVICE is being performed by CONTRACTOR in accordance with all provisions of the CONTRACT….[48]

The contract also requires Halliburton to "ensure that the terms of any subcontract shall be equivalent to the obligations of" the ENI US/Halliburton Contract; and "that any SUBCONTRACTOR [i.e. ATS] shall be bound to observe the provisions of [the ENI US/Halliburton Contract] that would be applicable to [ATS] as if it directly provided the SERVICES"; and likewise to "coordinate all SUBCONTRACTORS [i.e. ATS] working at [ENI US's] WORK SITE shall coordinate all SUBCONTRACTORS working at [ENI US's] WORK SITE, in particular in relation to Health, Safety, Environment… aspects.[49] Under these provisions, ATS and Plaintiff were "SUBCONTRACTORS" within HESI's "CONTRACTOR GROUP."

In turn, ATS – as a subcontractor of ENI US's independent contractor Halliburton - was contractually defined as an independent contractor of ENI US, under analogous caselaw confirming that an independent contractor (like ATS) *of an independent contractor* (like Halliburton) is also an independent contractor of the principal (like ENI US).[50]

---

[48] Ex. 2, §35 (ENI-SANTORINI_000662).

[49] *Id*. at §7.4, §7.9, §7.10 (ENI-SANTORINI_000635).

[50] *See, e.g.*, *Rakiep v. Hess Corp.*, 2024 U.S. Dist. LEXIS 180750, *13 (E.D. La. Oct. 3, 2024); 2024 WL 4393168 (granting Rule 12(b)(6) dismissal of plaintiff's claims for failure to allege "a duty owed by Hess (as principal) to him (as employee of an independent contractor's [Inspectram's] subcontractor [Southey].").  *See also Coleman v. BP Exploration & Prod.*, 2020 U.S. Dist. LEXIS 199396, *11 (S.D. Tex. Oct. 7, 2020); 2020 WL 6292491 ("While Coleman is correct that there was no contract between BP and his employer (Brand), the Master Agreement for

-12-

### 2.    Halliburton/ATS Contract

The Halliburton-ATS Contract reciprocally confirms that ATS is an independent contractor as to Halliburton: "Independent Contractor. Seller [ATS] is an independent contractor with respect to the Goods or Services supplied hereunder and neither Seller nor anyone engaged or employed by Seller shall be deemed for any purpose to be the agent or employee of Halliburton in the supply of such Goods or Services. Halliburton shall have no direction or control of Seller or its employees; Halliburton being solely interested in the results to be obtained."[51]  Plaintiff's testimony confirms that this contractual framework mirrored the actual operations on the SANTORINI – Plaintiff was in charge of operating the ATS tool, and there were no Halliburton personnel involved in the ATS operation Plaintiff was conducting in connection with the alleged incident.[52]  This further confirms the independent contractor status of ATS/Plaintiff as to ENI US.

### 3.    ENI US/Saipem Drilling Contract/Time Charter (DC/TC)

The DC/TC also reinforces that ENI US did not retain operational control over the SANTORINI or its relevant conditions or Plaintiff's shipboard activities. The DC/TC includes an express provision (Clause 14) stating that Saipem is an independent contractor of ENI US:

> CONTRACTOR [Saipem] shall be an independent CONTRACTOR with respect to the performance of the SERVICE and neither CONTRACTOR nor anyone employed by CONTRACTOR shall be deemed for any purpose to be the employee, agent, servant, borrowed servant or REPRESENTATIVE of COMPANY [ENI US] in the performance of any work or SERVICES hereunder…[ENI US] shall have no

---

Provision of Services between BP and Grand Isle provides that Grand Isle's subcontractors were Grand Isle's responsibility. Moreover, Brand agreed in the Grand Isle-Brand contract to assume "all obligations and responsibilities and duties that Grand Isle has, by the Contract Documents, assumed towards [BP].").

[51] *See* Ex. 3, §3.8 (ENI-SANTORINI_000675). *See also Cross Logistics, Inc.*, 2014 U.S. Dist. LEXIS 74624 at *40; Case No. H-11-3447, R. Doc. 79 at p. 35 ("[T]he Main Contract [between Mariner and Oceaneering] states that Oceaneering 'shall be an independent contractor with respect to the performance of all work provided and services rendered hereunder, and…Mariner shall have no direction or control over [Oceaneering] or its employees, agents, contractors, or subcontractors except in the results to be obtained…Correspondingly, under the Back to Back [contract between Cross/Oceaneering], Cross was an independent contractor with respect to all work provided and services rendered…and Oceaneering had no direction or control over Cross except in the results to be obtained.").

[52] *See* Ex. 1, p. 219:23-25; p. 231:13-15.

#111574906v5

direction or control of [Saipem] or its employees, agents, REPRESENTATIVE(S) or SUB-CONTRACTORS, except in the results to be obtained.[53]

(hereafter "*Results Obtained* Clause"). Thus, with respect to the SANTORINI's condition and operations, Saipem was an independent contractor of ENI US, and ENI US retained no operational control over the drillship and its shipboard operations.

Additionally, the "Bridging Document" further confirms that ENI US specifically had no operational control regarding the SANTORINI and the operations/conditions related to Plaintiff's incident. This document specifies that Saipem has sole contractual responsibility and control with respect to the SANTORINI itself vis-à-vis "facility design" and "[c]onduct[ing], manag[ing], and communicat[ing] the hazards analysis (facility level) for equipment, materials or processes owned or contracted by the Contractor [i.e. SANTORINI and its components/equipment]."[54] Likewise, Saipem is allocated responsibility for "[o]perating procedures that provide instructions for conducting safe …activities and address[ing] equipment or processes owned or contracted by [Saipem]," including the ongoing rig floor operations that Plaintiff testified were underway and being supervised by the Saipem driller relative to the circumstances of his incident;[55] as well as "develop[ing] [Saipem's] own Operating Procedures to maintain safe operations" including "[c]ontrol[ling] the presence, entrance and exit of personnel in [Saipem's] operating area [on the rig]."[56] Additionally, and perhaps most pertinent to the alleged condition of the incident area, Saipem had exclusive responsibility for" [e]stablish[ing] responsibility and authority for stop work when an unsafe condition or act could result in an undesirable event, or when witnessing imminent

---

[53] Ex. 4, Cl. 14 at SPCM 000109.

[54] *See* Ex. 5, SPCM 000034 (Chart at "Element 2" and "Element 3").

[55] Ex. 1, p. 218:9-11.

[56] Ex. 5, SPCM 000035-36 (Chart at Element 5" and "Element 6").

-14-

risk, or danger to people, equipment, and the environment."[57]  In the end, the "Bridging Document" dictates that the SANTORINI Master is "**ultimately responsible for safety and integrity of the Ship and Personnel on board** [and] has ultimate authority on board," all of which was confirmed by the SANTORINI's Master, who testified that Saipem had responsibility for the layout, condition and housekeeping of the incident area.[58]

> ii.    **ENI US is Entitled to Summary Judgment under Well-Established Independent Contractor Jurisprudence**

These undisputed facts align with numerous cases in the Fifth Circuit granting summary judgment dismissing similar maritime claims based on the independent contractor defense.

For example, this Court in *Chiasson v. Brand Energy Solutions, LLC*, 452 F. Supp. 3d 472, 474 (W.D. La. 2020) granted summary judgment pursuant under maritime independent contractor principles in favor of defendant time charterer, dismissing all claims by a scaffold builder employed by an independent contractor who slipped in drilling mud after the time charterer (via a contractor) had cleaned the tank arising from a slip-and-fall aboard a semi-submersible drilling vessel. The Court noted that "an independent contractor is not liable for the torts of another independent contractor unless…one of the independent contractors exercises operational control over the other"; and regardless, "[a] principal is not liable for the torts of an independent contractor unless the principal exercises operational control over or expressly or impliedly authorizes the independent contractor's actions."[59] Likewise, "[t]he operational control test is not satisfied unless it is shown that the principal (or controlling independent contractor) determined the method by

---

[57] *Id*., SPCM 000037 (Chart at "Element 14").

[58] *Id*., SPCM 000038 (Chart at "Element 15"); Ex. 6, p. 19:7-24; p. 20:6-11; p. 94:21-25; 95:1.

[59] 452 F. Supp. 3d at 478-79 (quoting *Landry v. Huthnance Drilling Co*., 889 F.2d 1469, 1471 (5th Cir. 1989).

-15-

which the employees were to perform their work and instructed them accordingly."[60] Under these principles, the Court held "neither [the time charterer] nor [the independent-contractor-cleaner] had oversight authority over [plaintiff's employer's] employees and were not even present on the vessel at any time during [plaintiff employer]'s operations."[61]

Essentially the same analysis applies here under the relevant contractual terms and the undisputed facts. ENI US did not exercise operational control over Plaintiff/ATS's work (under Halliburton) or the conditions at issue on the deck/intermediate step aboard the SANTORINI pursuant to the relevant contractual terms; and as Plaintiff's testimony confirms, the ENI US company man was not in the area of the rig floor or the area of the incident at the time of and immediately after the alleged incident.[62] This Court's analysis in *Chiasson* applies in substantially the same way here, and the claims against ENI US fail as a matter of law.

Likewise, the Eastern District of Louisiana in *Gantt v. Seadrill Ams., Inc.*, 360 F. Supp. 3d 402, 411 (E.D. La. 2018) granted summary judgment under maritime independent contractor principles in a similar case involving injury claims relating to response to a fire in the air handling unit on the drillship WEST NEPTUNE, which was time chartered to LLOG from Seadrill under a daywork drilling contract and "bridging agreement" (like the DC/TC and "Bridging Document"):

> The Fifth Circuit has consistently held that a principal who hires independent contractors over which he exercises no operational control has no duty to discover and remedy the hazards created by its independent contractors. According to the daywork drilling contract, [LLOG] hired [Seadrill] as an independent contractor [that] was obligated to carry out the offshore drilling operations, which included furnishing the vessel that included the allegedly defective air handling unit…. [Plaintiff] concedes that the LLOG defendants did not exercise operational control…[T]he daywork drilling contract states that "all materials, equipment, goods, supplies or manufactured articles *furnished by* [Seadrill] in the performance

---

[60] *Id.* at 479.

[61] *Id.*

[62] Ex. 1, p. 275:4-20

-16-

of the work or services shall be suitable quality and workmanship for their intended purposes"…. In fact, the bridging agreement indicates that [Seadrill] was the entity responsible for a "rig hazards analysis," and an "X" is placed under [Seadrill's] name alongside the item "OIM responsible for vessel safety."[63]

The facts in *Gantt* are substantially identical to those before the Court here. Under the terms of the DC/TC and "Bridging Document," Saipem had exclusive responsibility for the condition of the area of Plaintiff's incident (as confirmed in the testimony of Master Morris), and ENI US had no operational control over any of Plaintiff's relevant activities.

The same outcome applied in *Menard v. LLOG Exploration Co., LLC*, 259 F. Supp. 3d 475 (E.D. La. 2017), which involved claims relating to a personnel basket transfer from an offshore supply vessel to a floating platform (owned by LLOG) using the platform's crane, all under the direction of the offshore installation manager employed by LLOG's contractor Wood Group. The plaintiff asserted negligence claims against LLOG as time charterer of the supply vessel. The *Menard* Court granted summary judgment dismissing the claims against LLOG on maritime independent contractor principles (as well as time-charterer non-liability, *see* §III.B *infra*):

> The Fifth Circuit has consistently held that a principal has no general liability for the negligence of its independent contractors over which he exercises no operational control…LLOG points to the [following] terms of the [contract] … to argue that it had no operational control over Wood Group…:
>
> > [LLOG] shall designate the work it desires to be performed and the ultimate results to be obtained, but shall leave to Contractor the methods and details of performance of the work, [LLOG] being only interested in the results obtained and having no control over the manner and method of performance.
>
> The clear language of the agreement indicates that Wood Group had exclusive control over the methods and performance of its employee's work, and that LLOG expressly disclaimed any connection with the actual performance of the services to be provided. Plaintiff has submitted no evidence that LLOG gave specific instructions or directives to Wood Group as to how its employees should work or

---

[63] 360 F. Supp. 3d at 406, 411-12.

-17-

> how to perform any part of their duties, and it is uncontested that no LLOG employee was present when Menard's accident occurred.[64]

The same analysis applies to Plaintiff's claims here. ENI US was not in charge of, and did not give any directions regarding, the ATS operations Plaintiff was conducting at the time of the incident; nor was ENI US in charge of Saipem's rig floor operations or the conditions on the deck of the SANTORINI, which were Saipem's responsibility under the DC/TC; nor were any ENI US personnel present in the area at the time of the incident.  Moreover, the relevant contracts (DC/TC, and those between ENI US and Halliburton, and then Halliburton and ATS) all included substantially similar, express independent contractor/"*results obtained*" clauses like the one in the LLOG contract in *Menard* – i.e. ENI US would have no "direction or control" over ATS's work (or that of Halliburton or Saipem), with ENI US solely interested with the "results obtained."

Numerous Fifth Circuit decisions have likewise upheld dismissal of claims in substantially analogous cases, as summarized by the Fifth Circuit in *Fruge v. Parker Drilling Co.*:

> When the contract assigns the independent contractor responsibility for its own activities, the principal does not retain operational control. Operational control exists only if the principal has direct supervision over the step-by-step process of accomplishing the work such that the contractor is not entirely free to do the work in his own way. Here, [contractor] was exclusively responsible for controlling the details of the work it performed: the contract provide[s] that [contractor] "shall be an independent contractor with respect to performance of all work hereunder [and the principal] shall have no direction or control of [contractor] or [its] Personnel except in the results to be obtained."…The physical presence of a representative of a principal is not sufficient to show supervision or control. [Even] [p]eriodic inspections by a principal's "company man" do not equate to that principal retaining control over the operations conducted by a drilling crew. In short, absent an express or implied order to the contractor to engage in an unsafe work practice leading to an injury, a principal…cannot be liable under the operational control exception. This Court has consistently held on similar facts that a principal…who hires independent

---

[64] 259 F. Supp. 3d at 481-482 (quotations omitted; citing *Skinner*, 655 F. App'x at 192 (quoting *Wilkins v. P.M.B. Sys. Eng'g, Inc*., 741 F.2d 795, 800 (5th Cir. 1984)).

contractors over which he exercises no operational control has no duty to discover and remedy hazards created by its independent contractors."[65]

These well-established principles apply directly here. ENI US did not exercise operational control over Plaintiff/ATS's work or the operations underway on the SANTORINI, and had no personnel present, at any relevant time to Plaintiff's alleged incident; and the relevant contractual terms all confirm ENI US's lack of operational control and the status of ATS and Saipem as independent contractors for whom ENI US cannot be liable as a matter of law. As such, Rule 56 requires summary judgment dismissing all Plaintiff's claims against ENI US.

### B. Separately, and Equally Dispositive, ENI US Cannot be Liable as a Matter of Law under Principles of Time Charter Non-Liability

ENI US is also entitled to summary judgment dismissing Plaintiff's claims under the separate and entirely independently dispositive Fifth Circuit jurisprudence precluding time charterer liability for shipboard incidents. Fifth Circuit law is clear that "a time-charterer is not liable [for injuries caused by a vessel's negligence] unless the cause of the harm is within the charterer's traditional sphere of control and responsibility or has been transferred thereto by the clear language of the charter agreement."[66] A time charterer is not liable for "the condition of the vessel under control of the vessel owner," absent specific contractual modification to the contrary.[67] When the charter assigns operational control, management, inspection, and safe maintenance/condition *to the vessel owner*, the time charterer will not be liable for incidents

---

[65] 337 F.3d 558, 564 (5th Cir. 2003) (affirming summary judgment dismissal of claims by a technician injured offshore by a malfunctioning hose component of the rig rented from an independent contractor by the principal) (assorted Fifth Circuit citations omitted).

[66] *Moore v. Phillips Petroleum Co.*, 912 F.2d 789, 791 (5th Cir. 1990) (quoting *Kerr-McGee Corp. v. Ma-Ju Marine Servs., Inc.*, 830 F.2d 1332, 1343 (5th Cir. 1987)).

[67] *Hudson v. Schlumberger Tech. Cor*p., 452 Fed. Appx. 528, 537 (5th Cir. 2011).

-19-

resulting from vessel conditions.[68] Thus, when "[t]he language of the time charter is unambiguous" and there is no "[c]lear, express language … to rebut the presumption that the parties did not intend to shift responsibility for negligence and unseaworthiness to the charterer," the owner, not the time charterer is entirely responsible for the condition of the ship.[69]

This is precisely the case here under the DC/TC, pursuant to which Saipem was required "to provide safe working conditions" on the SANTORINI, including (under Special Conditions Clause 8 "HSE REQUIREMENTS") the duty to "take, at its expense, all actions necessary to protect all persons from any exposure to, or hazard from, hazardous material and [to] adopt all measures needed to reduce, as low as reasonably possible, any injury or damage to people or property."[70] Moreover, the "Bridging Document" further confirms Saipem's exclusive responsibility for the condition of the intermediate step and deck areas and for safe operations on the SANTORINI,[71] as confirmed by the testimony of the SANTORINI's master.[72]  Likewise, DC/TC Clause 6.5 ("Scope of Operations, moves of the DRILLING UNIT") mandates that Saipem "shall be responsible for… such operations onboard the DRILLING UNIT as may be necessary for the safety of the DRILLING UNIT and CONTRACTOR PERSONNEL."[73] In sum, as the "Bridging Document" confirms, the "**Santorini Master (OIM) is ultimately responsible for safety and integrity of the Ship and Personnel on board** [and] has ultimate authority on

---

[68] *Id.  Accord Callahan v. Gulf Logistics, L.L.C.*, 456 Fed. Appx. 385, 390 (5th Cir. 2011) (summary judgment dismissal of §905(b) vessel negligence claims against time charterer based on the "absence of any evidence that [time charterer] created 'special circumstances' by involving itself in the timing or means of" the operations at issue (personnel basket transfer), and because the charter party included a clause that "remove[d] from [time charterer] any control over the means by which its desired results were obtained").

[69] *Grogan,* 2022 U.S. Dist. LEXIS 36102 at *5; 2022 AMC 69; 2022 WL 605799.

[70] Ex. 4 at SPCM 000106, SPCM 000078.

[71] *See* FNs 14-19 *supra*; Ex. 5 (Chart at "Element 2," "Element 3," "Element 5," Element 6," and "Element 14").

[72] Ex. 6, p. 19:7-24; p. 20:6-11; p. 94:21-25; 95:1; p. 27:18-20; p. 80: 16-21; 96:10-25; 97:1-2.

[73] Ex. 4 at SPCM 000099.

-20-

board…"[74]  Nothing in the DC/TC terms assigns control or possession of the vessel, navigational control, crew management, or shipboard safety responsibility to ENI US; and to the contrary the governing terms "unambiguous[ly] [confirm Saipem, and not ENI US is] responsible for keeping the ship seaworthy and in good condition."[75] Instead, the contract mirrors the traditional time-charter structure recognized by the Fifth Circuit, under which the vessel owner retains operational control while the charterer's role is commercial in nature. Further, the SANTORINI'S Master confirmed Saipem's responsibility for the area of the incident;[76] and Plaintiff confirmed the ENI US company man was not in the relevant area at the time of or after the alleged incident.[77]

Fifth Circuit courts routinely grant summary judgment in substantially identical cases.

The *Menard* decision similarly granted summary judgment *not only* on independent contractor grounds (as discussed above at §III.A.ii *supra*), but also on time-charterer non-liability:

> The plain text of the [time charter] contains nothing indicating [time charterer] had control over decisions related to personnel transfers, and expressly reserves the exclusive operation, navigation, management, control, performance, and use of the [vessel] to [its owner]. Further, plaintiff submits no evidence that [time charterer's] conduct as a charterer was "more broadly exercised or inconsistent with the terms of the charter agreement," *Callahan*, 456 F. App'x at 391, in relation to the personnel transfer[; nor any] evidence of "special circumstances" indicating [time charterer] had control over ingress and egress from the vessel. Thus, there is no disputed issue of fact over [time charterer's] lack of contractual and operational control….[78]

The same outcome in *Menard* applies here under substantially identical provisions of the DC/TC, and substantially analogous facts. The *Results Obtained* Clause of the DC/TC is effectively identical to the one in *Menard*; and the additional provisions in the DC/TC (i.e. Clause

---

[74] Ex. 5, SPCM 000037 (Chart at "Element 15").

[75] *Grogan,* 2022 U.S. Dist. LEXIS 36102 at *5; 2022 AMC 69; 2022 WL 605799.

[76] *See,* Ex. 6, p. 19:7-24; p. 20:6-11; p. 94:21-25; 95:1; p. 27:18-20; p. 96:13-23; 97:1-2.

[77] *See* Ex. 1, p. 275:4-20.

[78] 259 F. Supp. 3d at 483.

-21-

8 HSE REQUIREMENTS and Clause 6.5 "Scope of Operations, moves of the DRILLING UNIT") as well as the "Bridging Document" all include "plain text" confirmation that Saipem – *not ENI US* – "had control over decisions related to" the conditional and operational circumstances of Plaintiff's alleged incident, "and expressly reserves responsibility to Saipem for safety of "operations onboard the [SANTORINI] as may be necessary for the safety of the [vessel]."[79] Likewise, the SANTORINI Master's testimony confirmed Saipem's responsibility – not ENI US's - for the area and alleged condition of the deck where the incident occurred.[80]

The *Menard* decision continues a long line of substantially similar cases. Nearly forty years ago, the Fifth Circuit confirmed in *Kerr-McGee Corp. v. Ma-Ju Marine Services, Inc.*, that there is no viable §905(b) claim against a time charterer in the context of a vessel slip and fall where the charter party specified operational control to the vessel owner and not the time charterer.  The *Kerr-McGee* court reversed a jury's finding of liability and rendered judgment on appeal dismissing any claims against the time charterer: "[u]nder the provisions of [the time] charter, it is clear that maintaining the safety of the vessel's deck and stairs was the sole responsibility of [the owner,] [n]or did actual operations under the agreement indicate otherwise."[81]

The Fifth Circuit followed the well-established *Kerr McGee* precedent in the more recent *per curiam* decision in *Barron v. BP Am. Prod. Co.*, 590 Fed. Appx. 294, 295-96 (5th Cir. 2014), (cited by the *Menard* court) in affirming summary judgment dismissal of claims relating to a falling incident because the time charter in question "unambiguously establishe[d] that… the vessel owner maintained responsibility for the vessel" and the relevant operations/conditions thereon.

---

[79] Ex. 4, SPCM 000099.

[80] Ex. 6, p. 19:7-24; p. 20:6-11; p. 94:21-25; 95:1; p. 27:18-20; p. 96:13-23; 97:1-2.

[81] 830 F.2d 1332, 1341 (5th Cir. 1987).

Likewise, the Southern District of Texas reached a similar result in *Grogan v. Seaboard Marine, Ltd.*, which involved an unwitnessed slip and fall on a time-chartered vessel and claims under §905(b). The Court dismissed the plaintiff's claims based on (1) the plaintiff's admission that the time charterer "had no control over his work"; and (2) the fact that the time charter did not expand the time charterer's "traditional obligations" to include control over the condition of the vessel.[82]   The *Grogan* court confirmed that  "[c]lear, express language is needed to rebut the presumption that the parties [to a time charter] did not intend to shift responsibility for negligence and unseaworthiness to the charterer," and "[o]therwise, the charterer is liable under section 905(b) [only] if the cause of harm is within its "traditional sphere of control" — which includes the cargo route, general mission, and time requirements, **but not the owner's control over condition**."[83] Because there was no contractual or factual involvement of the time charterer with the operational facts of the incident, the claims against the time charterer were dismissed on summary judgment.

The same outcome also applied in the Eastern District of Louisiana's grant of summary judgment in *Alfred v. Hornbeck Offshore Servs.*, 2005 U.S. Dist. LEXIS 3325, *7-8 (E.D. La. Feb. 22, 2005); 2005 WL 517493, which dismissed slip and fall claims against a time charterer when a contractor (cook) slipped on a mopped floor on the vessel because the time charter did "not vest the charterer with the degree of control necessary to hold [it] responsible for the negligence of the crew or the unseaworthiness of the vessel" with respect to the alleged slippery condition at issue; and because the "alleged injuries … did not occur within the traditional spheres of activity over which a time charterer might exercise control… [and there was no evidence the time charterer had] any responsibility for controlling tasks like mopping."

---

[82] 2022 U.S. Dist. LEXIS 36102 at *3-4; 2022 AMC 69; 2022 WL 605799.

[83] *Id*. (emphasis added).

-23-

The results in *Grogan* and *Alfred*, as directed under the Fifth Circuit's *Kerr-McGee* and *Barron* jurisprudence, apply equally in this case under the relevant provisions of the DC/TC, "Bridging Agreement" and Plaintiff and Master Morris's respective testimonies.  Plaintiff's claims against ENI US are not viable as a matter of law under this well-established caselaw, and must be dismissed with prejudice under time charterer non-liability principles.

### C.  Plaintiff has no Viable Claim against ENI US under §905(b)/*Scindia*

As a final independent dispositive basis for dismissal of all claims against ENI US, Plaintiff has no viable claim against ENI US for vessel negligence under 33 U.S.C. §905(b) (Plaintiff's exclusive basis for any claim against ENI US as time charterer, *see* FN 1, 46 *supra*[84]) under the three narrow *Scindia* duties - (1)  turnover duty, (2) active control duty and (3) duty to intervene - all of which "are even more limited [for time charterers] than… for a vessel owner."[85]  For the same reasons asserted in §§I-III *supra* (incorporated here): (1) There is no evidence that ENI US had knowledge of any alleged hazardous condition within its purview as time charterer, precluding any "turnover duty" claim; (2) ENI US had no personnel in incident area, and was not involved in Plaintiff's work nor in control of step/incident area, precluding any "active control duty" claim; and (3) there is no evidence that ENI US as time charterer had actual knowledge of any alleged hazardous condition, precluding any "duty to intervene" claim.[86]

## IV.    CONCLUSION

The summary judgment record establishes as a matter of undisputed fact that Plaintiff was an employee of an independent contractor performing work controlled by his employer and its

---

[84]§905(b) authorizes a cause of action for injury "caused by the negligence of a vessel," and the term "vessel" is defined to include "any vessel … and said vessel's owner… [and] charterer."  33 U.S.C. §902(21).

[85] *Payano v. Envtl., Safety & Health Consulting Servs.*, 2018 U.S. Dist. LEXIS 170061, *16-17 (E.D. La. Oct. 2, 2018); 2018 WL 4739670 *aff'd* 778 Fed. Appx. 313 (5th Cir. 2019)*.

[86] *See Hudson v. Schlumberger Tech. Corp.*, 452 Fed. Appx. 528, 536-38 (5th Cir. 2011); *Renteria v. Grieg Star AS*, 168 F.4th 775, 780 (5th Cir. 2026) (Summerhays, J., sitting by designation).

upstream contractor aboard a vessel owned and operated by a separate entity. Plaintiff's own testimony confirms ENI US neither directed nor controlled the work being performed; nor did it exercise control over the vessel or the area where the incident allegedly occurred, as confirmed in the testimony of the SANTORINI master, as well as the unambiguous terms of the DC/TC and "Bridging Document" (and/or the ENI US/Halliburton and Halliburton/ATS contracts).

Under controlling Fifth Circuit maritime law, these undisputed facts foreclose any finding of liability against ENI US as a matter of law **on *three entirely distinct and independent grounds***: (1) ENI US cannot be liable pursuant to maritime independent contractor non-liability principles; (2) ENI US cannot be liable pursuant to time charterer non-liability principles; and (3) there is no evidence on the undisputed factual record that ENI US violated any of the three narrow *Scindia* duties, in its limited time charterer sphere.

Accordingly, Defendants respectfully request that the Court grant summary judgment in favor of ENI US and dismiss all Plaintiff's claims against ENI US with prejudice on any of these alternative bases.

#111574906v5