UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| MARIO GIL | CIVIL ACTION NO.: 6:24-cv-00201 |
| VERSUS | JUDGE SUMMERHAYS |
| ABC INSURANCE COMPANY, ENI US OPERATING CO., INC., and SAIPEM AMERICA, INC. | MAGISTRATE JUDGE AYO |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION IN LIMINE TO EXCLUDE TESTIMONY FROM
<u>PLAINTIFF'S PROPOSED SAFETY EXPERT, MICHAEL LEBSACK</u>**

Plaintiff's opposition to Defendants' *Daubert* motion (Rec. Doc. 55) misses the mark in attempting to characterize this as a mere disagreement over an expert's conclusions. Instead, Lebsack's opinions are based on insufficient, speculative, and incorrect facts and assumptions that make his opinions legally inadmissible, prejudicial, unreliable, and unhelpful to the jury. As a result, they must be excluded in their entirety.

**I.    Defendants Do Not Merely Disagree with Lebsack's Conclusions, They Are
Based on Incorrect and Speculative Facts.**

Plaintiff attempts to recast the numerous examples of Lebsack's reliance on incorrect and speculative facts and assumptions as mere "disagreements" with Lebsack's opinions that should be resolved by vigorous cross-examination rather than exclusion. But Lebsack's deficiencies go beyond mere disagreement or contradiction of Defendants' expert. They are based on wrong and purely speculative assumptions, not supported by any evidence. The Fifth Circuit has held that "[i]f an opinion is fundamentally unsupported, then it offers no expert assistance to the jury. Furthermore, its lack of reliable support may render it more prejudicial than probative, making it inadmissible under Fed. R. Evid. 403." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir.

1987).  And the two cases Plaintiff cites to support this baseless "mere disagreement" argument (Opp. p. 4-5) are inapposite. *Semere v. Ethicon, Inc.* (a surgical mesh products liability case) involved challenges to an expert's scope of expertise and his "reliance on certain studies or scientific literature," which the court held were insufficient for exclusion under *Daubert*, particularly because there was "evidence in the record" supporting the opinions. 2021 WL 4496319, *2 (W.D. La. Sept. 30, 2021). This is entirely different from the Lebsack report, which relies on objective factual errors, objectively baseless assumptions, and invalid outside sources (*see* §II *infra*).  *Shockman v. State Farm Lloyd's* involved a hail damage claim and insurance coverage dispute, in which the court refused to exclude an engineer/architect who had applied a widely judicially accepted methodology in his damage assessment. 2025 WL 1305355, *3-4 (S.D. Tex. Mar. 31, 2025). Again, *Shockman* did not involve objectively wrong facts, assumptions, and invalid sources like Lebsack's report.

Gil also misconstrues Defendants' argument regarding Lebsack's failure to consider any deposition testimony in arriving at his opinions. Defendants do not argue that experts should be excluded solely for failing to review deposition testimony. Rather, it is Lebsack's failure to consider the actual facts of this case and instead to rely on wrong and purely speculative assumptions, that render his opinions unreliable and inadmissible. *See Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005) ("[F]undamentally unsupported" opinions "offer[] no expert assistance to the [trier of fact]" and should be excluded.); *Whalen v. Monsanto Co.*, 2024 WL 4524170, at *6 (5th Cir. Oct. 18, 2024) ("expert testimony must … 'be more than unsupported speculation or subjective belief.'") (quoting *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012)); *Thibodeaux v. Gulf Coast Tugs, Inc.*, 668 F. Supp. 3d 486, 493 (E.D. La. 2023) ("[E]xpert evidence based on a fictitious set of facts is just as unreliable as evidence based upon no research

at all" and thus "expert testimony that relies on completely unsubstantiated factual assertions is inadmissible.") (quoting *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996) and *Moore v. Int'l Paint, L.L.C.*, 547 F. App'x. 513, 515 (5th Cir. 2013)).

In fact, Plaintiff's own pleadings and deposition testimony are contrary to Lebsack's analysis. In his description of the photographs of the step, Lebsack says: "Note what appears to be dirt and/or debris on the step."[1] But in his opposition to Saipem's motion for summary judgment, Plaintiff confirmed he "never alleged that there was a foreign substance on the step; he affirmed that point in his deposition."[2] Lebsack has an entire section of his report devoted to the Defendants' purported responsibilities to ensure the step was not dirty and slippery due to foreign substances.[3] It begs the question: if Plaintiff admits that he "never alleged there was a foreign substance on the step," why did his liability expert devote an entire section of his report on an irrelevant issue? This is precisely the point Defendants made in their *Daubert* motion enumerating other such examples where Lebsack's opinions were directly contradicted by the testimony, rendering his opinions unreliable as a matter of law.

II.    **Lebsack's Reference to Inapplicable and Unproduced Regulations, Standards, and Safety Manuals Make His Opinions Unreliable.**

Curiously, Plaintiff's Opposition (p. 8) claims that (1) Lebsack cites to 46 C.F.R § 108.197 and (2) that this regulation both addresses non-skid requirements and is "directly applicable."[4] A careful inspection of Lebsack's report (Rec. Doc. 55-2) reveals that 46 C.F.R § 108.197 is not cited

---

[1]    Rec. Doc. 55-2 at p. 6.

[2]    Rec. Doc. 67 at p. 11.

[3]    *See* Rec. Doc. 55-2 at pp. 16-17, section C.3 (titled "If the Step Was Dirty, Then It Was a Slipping Hazard That Should Have Been Promptly Cleaned.").

[4]    Rec. Doc. 69 at p. 10.

or referenced anywhere. Further, that regulation pertains to construction of accommodation spaces on mobile offshore drilling units and contains no mention of non-skid. This regulation is not "directly applicable" as Plaintiff's Opposition claims, and in any event, it is not even mentioned (much less analyzed) in Lebsack's report.

In response to Defendants' contention that Lebsack references OSHA, ASTM, and ASNI standards as well as policies from many safety manuals from irrelevant third party companies, Plaintiff acknowledges that "Lebsack does not claim these standards are legally binding on the SANTORINI."[5] What Plaintiff fails to acknowledge is that none of the purported safety manuals or standards from these third parties upon which Lebsack relies were produced by him as required by Federal Rule of Civil Procedure 26(a)(2)(B), and they are not publicly available. Putting relevancy issues aside, with discovery long closed and expert reporting deadlines long past, these materials are inadmissible as they have not been produced directly or as part of Lebsack's Rule 26 reliance materials in his report. The Defendants and the jury should not have to take Lebsack's word for what those materials say and any opinions regarding those materials must be excluded under Rule 37(c).

Moreover, Plaintiff's contention–with no legal citation–that expert testimony regarding industry standards is appropriate and admissible even when those standards are not legally binding" (p. 8) is invalid on two independent grounds as a matter of law. First, inapplicable "regulation[s] [are] irrelevant as evidence of the industry standard of care" under Rule 702 and *Daubert* principles. *Minton v. Intercontinental Terminals Co., LLC*, 697 F. Supp. 3d 690, 701 (S.D. Tex. Oct. 2, 2023); *In re M&M Wireline & Offshore Servs., LLC*, 2017 WL 480603, *8 (E.D. La.

---

[5]     *Id.* at 9.

Feb. 3, 2017) ("[I]napplicable OSHA regulation [cannot be used] to determine the standard of care here is irrelevant and should be excluded."). Second, inapplicable regulations cannot be used to establish a standard of care under Rule 403 principles: "the probative value of expert testimony about [inapplicable] OSHA regulations is substantially outweighed by the danger of unfair prejudice, as it would likely mislead the jury." *Francois v. Diamond Offshore Co.*, 2013 WL 654635, *4 (E.D. La. Feb. 21, 2013); *Johnson v. Packaging Corp. of Am.*, 2024 WL 404501, *3 (M.D. La. Jan. 25, 2024) (finding that expert evidence regarding inapplicable regulation "is irrelevant and therefore not helpful testimony under Rule 702" and to permit an expert to testify that an inapplicable regulatory standard is evidence of the industry standard of care "is unhelpful and risks confusing the trier of fact.").

### III.   Lebsack's Reliance on Subsequent Remedial Measures Is Legally Inadmissible and Prejudicial.

Plaintiff also attempts to use Saipem's post-incident remedial measure of repainting the step with additional non-skid as confirmation that Lebsack's methodology was sound because "his conclusions match Defendants' own findings."[6] To be clear, Defendants' findings regarding the cause of the incident do not match Lebsack's purported opinions. The "Direct Causes" for Plaintiff's injury listed in Saipem's Incident Investigation Report were "Inattention for obstructions to walking (slip and trip)" and "Failure to secure safe foot placement on stairways and ladders."[7] The Saipem Incident Investigation Report further confirms that while the step was in good condition, the decision was made to apply additional paint with non-slip material in direct

---

[6]   Rec. Doc. 69 at p. 14.

[7]   Rec. Doc. 69-6 at p. 8.

response to Plaintiff's accident.[8] And Master Morris testified that he "would not have done so if we hadn't had the . . . slip."[9]

This is the definition of a subsequent remedial measure, which cannot be used to establish that a defendant is liable. *See Relf v. Wal-Mart Stores, Inc.*, 49 F.3d 728, at \*3 (5th Cir. 1995) (a defendant "does not open the door to evidence of subsequent remedial measures merely by arguing that it was not negligent or that a dangerous condition did not exist"). This is because the safety measures reflect precautionary risk-reduction, not an admission of pre-incident defect. *See* Fed. R. Evid. 407, Advisory Committee Note (1972) (explaining the primary justification for the rule: "a social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety."). Indeed, courts routinely hold that post-incident remedial measures are inadmissible under Federal Rule of Evidence 407 for the purpose of establishing negligence. *See, e.g.*, *Thornton v. Diamond Offshore Drilling, Inc.*, No. 07-1839, 2008 WL 2315845, at \*4 (E.D. La. May 19, 2008) ("The rule protects a party from having subsequent remedial measures used against it as evidence of its negligence in the first instance and thus helps to avoid the socially undesirable consequence of a party's reluctance to make safety improvements out of a fear of increased exposure to liability."). As a result, Lebsack's opinions that are based on Saipem's subsequent remedial measures are legally inadmissible and prejudicial to Defendants and should be excluded.

**IV.    The Cases Cited by Plaintiff in Support of Lebsack's Testimony Are Distinguishable.**

Plaintiff argues in his opposition that expert testimony is needed merely because his injury

---

[8]      *Id.* at p. 6.

[9]      Rec. Doc. 52-3 at p. 69.

occurred on a vessel in "an offshore context." The three cases cited by Gil for this unfounded proposition are readily distinguishable from the circumstances here.

In *McMullen v. BP Exploration & Production*, No. 12–1206, 2013 WL 2556032, at *7 (M.D. La. June 19, 2013), the plaintiff injured his back while servicing a "chemical tote" on an offshore facility. The court allowed expert testimony because the case involved specialized equipment (the tote) likely to be unfamiliar to the average juror. The plaintiff in *Bulter v. Ensco Offshore Co.*, No. 07-1700, 2009 WL 859290, *3 (W.D. La. Mar. 27, 2007) was injured while pulling chrome tubing out of a well on a drilling rig. Finding that "[t]he specifics of these operational requirements may not be as obvious to the average juror as the issues involved in *Peters*," Judge Melancon allowed expert testimony. Similarly, in *Johnson v. Cenac Towing Inc.*, No. 06-0914, 2006 WL 5499506, *3 (E.D. La. Nov. 21, 2006), where the plaintiff was injured while carrying a "crossover hose" on the deck of a vessel, the court allowed the defendant to offer limited expert testimony regarding the use of "hose-carrying tongs" considering the specialized nature of both the activity and equipment.

Each of these cases involved specialized oilfield equipment likely to be unfamiliar to a jury. And, unlike the incident here, none of the cases involved a mere slip and fall on a vessel. Notably, Lebsack does not depend upon regulations requiring non-skid surfaces, did not inspect the area himself, he did not compare any measurements or dimensions against standards, and he did not analyze the coefficient of friction of the surface. In short, he has nothing worthwhile to add that would assist the jury and his opinions should be excluded as result.

## V.    Conclusion

For the reasons discussed here, and in the Defendants' original supporting memorandum, Lebsack's opinions fail the test for admissible expert testimony as outlined in Rule 702 and

*Daubert*. Defendants respectfully request that Lebsack be excluded from testifying at trial.

Respectfully submitted,

*/s/ Lance C. Bullock*

Thomas P. Diaz (Bar #18863)
Alexander J. Baynham (Bar #36369)
Lance C. Bullock (Bar #38519)
**LISKOW & LEWIS**
Hancock Whitney Center, Suite 5000
701 Poydras Street
New Orleans, Louisiana 70139
Telephone: 504-581-7979
Facsimile: 504-556-4108
Email: tpdiaz@liskow.com
Email: ajbaynham@liskow.com
Email: lbullock@liskow.com

**MURPHY, ROGERS, SLOSS,
GAMBEL & TOMPKINS**

*/s/ Peter B. Tompkins*

Peter B. Tompkins (#17832)
ptompkins@mrsnola.com
Timothy D. DePaula (#31699)
tdepaula@mrsnola.com
Suite 400, Hancock Whitney Center
701 Poydras Street
New Orleans, Louisiana 70139
Telephone: (504) 523-0400
Facsimile: (504) 523-5574

***Attorneys for Saipem (Portugal) Comercio Maritimo, SU, LDA***

*/s/ Christopher M. Hannan*
CHRISTOPHER M. HANNAN (#31765)
STEPHEN B. REYNOLDS, JR. (#41384)
JONES WALKER LLP
201 St. Charles Avenue, Suite 5100
New Orleans, Louisiana 70170
Telephone:  (504) 582-8353
Facsimile:   (504) 589-8353
Email:  channan@joneswalker.com
         sreynolds@joneswalker.com

***Counsel for Defendant Eni US Operating Co. Inc***