**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| MARIO GIL | CIVIL ACTION NO: 6:24-cv-00201 |
| VERSUS | JUDGE ROBERT R. SUMMERHAYS |
| ABC INSURANCE CO., ENI US OPERATING CO. INC., AND SAIPEM AMERICA, INC. | MAGISTRATE JUDGE AYO |

**DEFENDANTS' JOINT REPLY IN SUPPORT OF JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT & EXCLUSION OF EVIDENCE OF CERTAIN FUTURE EARNINGS**

Defendants ENI US and Saipem submit this Reply in further support of their Joint Motion ("Motion," R. Doc. 58) for Partial Summary Judgment and to Exclude All Evidence (including Plaintiff's vocational rehabilitationist Peterson and economist Theriot) regarding contrary-to-fact and speculative future earning claims; and in response to Plaintiff's Opposition (R. Doc. 70), which does nothing to refute the inherently speculative nature of the claims addressed in the Motion, and in fact doubles down on the speculation.[1] All defined terms in the Motion are used in this Reply.

Defendants acknowledge Plaintiff has a potential claim (which Defendants dispute in terms of liability and quantum) for loss of earnings to the extent he claims his injuries allegedly prevent him from working offshore earning the "offshore day rate" (Opp. p. 3; *see also id*. p. 4) component of his compensation from ATS. **This is not at issue in Defendants' Motion**. Rather, as previously noted, the Motion seeks partial summary judgment and evidentiary exclusion **solely** for future loss of earnings claims *based on the contrary-to-fact and inherently speculative* basis that Plaintiff may at some unknown time and for some unknown reason lose his ATS job and be 100% unemployable.

1. **Plaintiff Ignores the *Multiple Non-Factual Bases* of his Future 100% Unemployable Claim**

As a preliminary point, Plaintiff's Opposition *does not address at all* the numerous

---

[1] Defendants respectfully reiterate that if the Court finds merit in ENI US and Saipem's independent motions for summary judgment as to the lack of any viable claims against each Defendant (see R. Docs. 52 & 57), the Court need not rule on this Motion, as it would be moot if Plaintiff's claims against Defendants were dismissed in their entirety.

#111830652v4

fundamentally wrong bases for his claims and evidence regarding a hypothetical future earnings scenario in which he is 100% unemployable.  Peterson/Theriot base their opinions on the alleged fact that Plaintiff's "physical impairments and overall medical condition are expected to prevent him from performing his current job as VP of Business Development in a full capacity"; that he is limited in "his ability to perform all work duties"; and *is underlined currently not able to work*" (emphasis in original, R. Doc. 58-1, p. 3, 4).  This is all incorrect on the undisputed factual record, and warrants exclusion of Peterson/Theriot because their testimony will "not [be] based upon the facts in the record but on altered facts and speculation designed to bolster [a party's] position."[2]

Moreover, the Peterson Report readily acknowledges that if Plaintiff loses his ATS job at some unknown point in the future for some unknown reason, "his future wage-earning capacity will depend upon his residual physical functional capacity" at that unknown time (R. Doc. 58-4, p. 2).  This acknowledges that Plaintiff's notional 100% future unemployability is fundamentally and inescapably speculative because any such determination would require a functional capacity evaluation at some unknown point in the future.  Simply put, there is no basis on which Plaintiff's claim of potential 100% future unemployability can be factually supported based on his own expert's confirmation that any such determination would require an assessment in the future.

### 2.    Plaintiff Fundamentally Misapprehends the Applicable Legal Standard

Plaintiff's Opposition by its own terms further highlights the inherently speculative, and thus legally baseless, nature of any 100% unemployable future earnings claim.  The Opposition hypothesizes that "**if** Gil cannot continue working at ATS," a potential "**pending**" second surgery "**could make** Peterson's 'totally vocationally disabled' scenario a reality" given the "**risk of** incomplete recovery [] create[ing] the **real possibility** that Gil **could be rendered** totally

---

[2] *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (emphasis added). *Jacked Up, L.L.C. v. Sara Lee Corp.*, 807 F. App'x 344, 348 (5th Cir. 2020) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

#111830652v4

incapacitated from the labor market" (Opp, p. 1, 6 emphasis added). As these bolded terms show, Plaintiff's claims based on potential future unemployment/unemployability are utter speculation: *if* he gets another surgery, ***and if*** that surgery doesn't go well such that it leaves him disabled and not functionally capable, ***and if*** ATS won't at that point retain him (as it has done now for the more than three years since the underlying incident), ***then maybe*** he won't have any income.

This cascade of hypotheticals exemplifies the fundamentally speculative nature of Plaintiff's claim based on a notional 100% non-employability at some unknown point in the future, and the expert evidence propping it up.  Moreover, this speculation ignores that Plaintiff has continued to remain employed by ATS in the same position he has held in the three years since his alleged incident – including after his cervical surgery.  Plaintiff's contention that this string of conjectures "is a quintessential jury question" (Opp. p. 1) is contrary to applicable law: "A damage award cannot stand when the only evidence to support it is speculative or purely conjectural."[3]  It is also contrary to Fifth Circuit Pattern Jury Instructions, which unequivocally confirm that a jury's damage "cannot be based on speculation" or "arbitrary guesswork."[4]

Moreover, "[u]nsupported speculation does not create a genuine issue of material fact" to defeat a properly supported summary judgment motion.[5]  Plaintiff's Opposition does nothing to dispute – and in fact simply *compounds* – the inherently speculative nature of the claims and evidence the Motion seeks to dismiss/exclude.

**3.      "Medical Accommodation" and "Sheltered Employment" Arguments are Groundless**

Plaintiff attempts to argue that his employment with ATS since the incident three years

---

[3]  *Denton v. Morgan*, 136 F.3d 1038, 1046 (5th Cir. 1998).

[4] Fifth Circuit Pattern Jury Instructions (Civil Cases), §4.8, §15.2 *available at* https://www.lb5.uscourts.gov/viewer/?/juryinstructions/Fifth/2020civil.pdf

[5] *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 826 (5th Cir. 2019).

#111830652v4

ago, and currently, amounts to "sheltered employment" (Opp., p. 4). This is legally baseless: "the term 'sheltered' refers specifically to an institutional program providing protected employment for handicapped individuals."[6] Plaintiff's testimony describing his promotion and expanded job responsibilities and tasks in the "important" role of ATS Vice President of Business Development (*see* Memorandum in Support of Motion, R. Doc. 58-1, pp. 2-5) refutes any suggestion that his employment at ATS is merely an "institutional" or otherwise sheltered" employment situation.

Moreover, *there is no record evidence* confirming that Plaintiff's Vice President role at ATS constitutes "sheltered employment." No witness from ATS has testified in this regard; and Peterson's report merely ambiguously asserts the *ipse dixit* conclusion that Plaintiff "is currently working in a sheltered employment type setting" (R. Doc. 58-4, p. 5), without any factual basis to support that ambiguous conclusion. Peterson's report does not specify the criteria or factual basis for the statement that Plaintiff's employment at ATS is "sheltered employment type setting," whatever that may be. Nor does it identify any evidence or communications with ATS to confirm the assumption/speculation in the report that Plaintiff's Vice President position qualifies as "sheltered employment." Plaintiff bears the burden of proof on his claims relating to future earnings/earning capacity, but has not presented any evidence on the present summary judgment record to support his "sheltered employment" contentions that underlie his 100% future unemployability claims.[7]

---

[6] *Smith v. Colvin*, No. 15-5135, R. Doc. 24, 2017 U.S. Dist. LEXIS 26087, *31 (E.D. La. Feb. 3, 2017). *See also Harrod v. Newport News Shipbuilding & Dry Dock Co.,* 12 BRBS 10 (Longshore Benefits Review Board, Feb. 29, 1980) ("Sheltered employment may be said to occur, for example, when claimant is physically incapable of performing the duties required by his job but nevertheless receives wages, or where the job is unnecessary to employer's operations and merely created in order to place claimant on the payroll.").

[7] *See Parker v. Barriere Constr. Co., LLC*, 2024 U.S. Dist. LEXIS 138057, *6 (E.D. La. Aug. 5, 2024); 2024 WL 3677167 (plaintiff bears burden of producing summary judgment evidence on future earnings claim); *Stewart v. Am. Family Ins. Group*, 2008 U.S. Dist. LEXIS 20787, *6 (W.D. La. Mar. 17, 2008); 2008 WL 728944 (same).

#111830652v4

Additionally, Plaintiff's arguments that his role as Vice President of Business Development is "an accommodation, not a promotion" and that his "continued employment depends on a single sympathetic employer" (Opp. p. 4) are contrary to the undisputed facts.  Plaintiff testified that in his role as Vice President of Business Development, his duties have not changed (other than that he no longer goes offshore); he has "more responsibilities than [he] ever had" prior to the alleged incident; and he has worked in that role continuously, at full salary, without any interruptions (other than allowed vacation/time off approved by ATS).[8]  As part of this role, Plaintiff was given responsibility for all research and development of ATS's new subsea tool services line, with plans for ATS to begin offering those services this year (2026).[9] Plaintiff also confirmed that his job as Vice President of Business Development is "an important job for ATS" and that no one has ever indicated to him that he was at risk of being fired.[10]  Plaintiff has been able, during the entirety of the more than three years since the incident, to continue performing all necessary tasks (meetings, travel, office work) required by his Vice President of Business Development role.[11]  While Plaintiff has undisputedly not returned to work offshore, he has fully performed his work as Vice President of Business Development for ATS.  Plaintiff's position as Vice President of Business Development is not an accommodation, and there is no genuinely disputed issue of material fact in this regard.

The only concerns the Peterson Report noted as to Plaintiff's potential future unemployability were hypothetical scenarios "if his current employer sells the company and/or he is required to seek employment elsewhere" (R. Doc. 58-4, p. 5), and Plaintiff himself confirmed he had no knowledge of any risk of being terminated from his "important" role with ATS.  But

---

[8]  R. Doc. 58-2, p. 144:18-25 (no change in duties, "more responsibilities than I ever had"); p. 111:1-25; p. 112:1-19; p. 94:17-25; p. 326:15-20.

[9]  R. Doc. 58-2, p. 145:8-25; p. 146:1-2, 7-20.

[10]  R. Doc. 58-2, p. 347:19-25.

[11]  *See* R. Doc. 58-2, p. 108:2-25; p. 109:1-25; p. 110:1-25; p. 111:1-10; p. 352:10-25; p. 353:1-18.

these hypothetical concerns in the Peterson Report – potential future firing and potential future sale of the company – *would be present in every single case* involving a post-incident employed plaintiff.  Allowing the mere hypothetical possibility of future termination/company restructuring as a basis for a 100% unemployable future earnings claims would violate the well-established rule that "purely conjectural or uncertain future loss of earnings will not be allowed."[12]

Putting aside that there is no competent summary judgment (or expert) evidence to support Plaintiff's accommodation/"sheltered employment" arguments, the Opposition further piles conjecture on conjecture by suggesting that any (as-yet merely potential) lumbar surgery might possibly lead to further restrictions "exceeding what ATS's accommodation can absorb" (Opp., p. 4).  Because there is no evidence of any actual "accommodation"– much less evidence (including the Peterson Report) as to the scope and parameters of ATS's supposed current "accommodation" – there is no basis for any claim derived from what any such accommodation could "absorb."

**4.**    **The Peterson Report Fails to Consider Alternative Employment contrary to *Culver II***

Further, the Peterson Report's ultimate conclusion, by its own terms, is *entirely based on speculation*: "**If** [Plaintiff] is unable to continue [working at ATS], his advanced age, limited education, and need for job accommodations **could render him totally vocationally disabled**" (emphasis added, R. Doc. 58-4, p. 5.  However, the Peterson Report does not provide any analysis (i.e. labor market survey, vocational job market analysis) beyond this mere *ipse dixit* statement to support the proposition that Plaintiff's hypothetical condition at some hypothetical future date "could render him totally vocationally disabled," *despite* the fact  that it otherwise acknowledges (even after a hypothetical lumbar surgery) that Plaintiff would be able to work within a "sedentary" job (R. Doc. 58-4, p. 4).  Nor does it consider any alternative employment scenarios against which

---

[12] *Smith v. Harrah's New Orleans Mgmt. Co.*, 213 Fed. Appx. 353, 360 (5th Cir. 2007).

to assess Peterson's speculation that Plaintiff will have a "need for job accommodations." This internal contradiction (i.e. that Plaintiff can perform "sedentary" work but will also be unemployable), combined with the lack of any "sedentary" job analysis, is contrary to the governing maritime law framework for determining loss of future earnings (i.e. the "*Culver II*" framework, *Culver v. Slater Boat Co.*, 722 F.2d 114 (5th Cir. 1983)), which Plaintiff's Opposition does not address at all. Under *Culver II*, the Plaintiff's alleged "lost income stream" must be calculated, which requires consideration of potential future post-injury employment[13] that the Peterson Report does not assess and on which it is internally contradictory.

### 5.    Plaintiff's Attempts to Distinguish the Relevant Caselaw are Unavailing

Plaintiff argues that *Gilmore* is inapposite because Peterson/Theriot are not "projecting any fantasy career" but are instead opining on Plaintiff's current and past work history and medical concerns (Opp. p. 5). This again ignores the limited scope of Defendants' Motion: Plaintiff has a right to pursue his claim for future loss of earnings (which Defendants will vehemently oppose) in relation to his alleged inability to work offshore. However, the "project[ed] fantasy" in *Gilmore* is substantially identical to the completely unknown, inherently speculative string of hypotheticals in the Peterson/Theriot reports regarding Plaintiff's potential future 100% unemployability.

Likewise, Plaintiff's attempt to distinguish *Crosby Marine* focuses on the fact that the plaintiff in that case did not have any experts regarding her future earnings loss claims. This is a distinction without any meaningful difference. The mere absence of expert evidence in *Crosby Marine* is effectively the same as the absence of any *non-speculative factual basis* for Plaintiff's future 100% unemployability claim in this case. In other words, the net effect is the same in this

---

[13] *Vaughn v. Am. Com. Barge Line, LLC*, 2026 U.S. Dist. LEXIS 54774, *5 (E.D. La. Mar. 17, 2026) ("When the plaintiff will be able to return to work in some capacity, the wages he is expected to earn for the remaining years of his work life must be subtracted from the lost income stream.").

7

case as in *Crosby Marine:* there is no <u>factual basis</u> for any future loss of earning claim based on the speculative hypothetical that Plaintiff might at some point be 100% unemployable in the future.

**6.        Plaintiff's *Daubert* Arguments are Inapposite**

Plaintiff suggests that the fundamental errors in the Peterson Report (*see* §1 *supra*) are somehow inconsequential because Plaintiff was deposed after the report was issued (Opp., p. 7). This is misdirection.  Regardless of when Plaintiff was deposed, Peterson knew or should have known that Plaintiff has been working continuously in his role as Vice President of Business Development; and yet the Peterson Report relies in part in its analysis on the glaringly wrong assumption that *Plaintiff was not able to work and was not in fact working*, when he has in fact been working as Vice President of Business Development since the incident (*see* §3 above).

Plaintiff's attempt to distinguish *Lowery* likewise fails. Indeed, Plaintiff's own description of the relevant facts of *Lowery* – i.e. "the expert had assumed restrictions… the plaintiff's actual work pattern disproved" (Opp. p. 9) – are precisely the same here: the Peterson Report assumes Plaintiff's "physical impairments and overall medical condition are expected to prevent him from performing his current job as VP of Business Development in a full capacity"; that he is limited in "his ability to perform all work duties"; and  *is <u>currently not able to work</u>*" (emphasis in original, R. Doc. 58-1, p. 3, 4).  **All of this is wrong** on the undisputed factual record.

**7.        CONCLUSION**

Plaintiff's Opposition has not meaningfully addressed or distinguished the arguments and authorities set forth in Defendants' Motion.  The undisputed facts confirm that Plaintiff's future earnings claims based on both objectively wrong assumptions and/or the premise of a hypothetical future termination of employment from ATS will render him 100% unemployable are inherently speculative and thus legally untenable.  Defendants request dismissal of any claim by Plaintiff based on such incorrect/speculative premises (i.e. the scenario in the first chart on unnumbered p.

#111830652v4

8 of the Theriot Report, Exhibit 4, derivative of the Peterson Report); or alternatively, exclusion

from trial of all evidence of such claims by Peterson/Theriot (or any other source).

Respectfully submitted,

**JONES WALKER LLP**
/s/ *Christopher M. Hannan*
Christopher M. Hannan
Stephen B. Reynolds, Jr.
201 St. Charles Avenue
New Orleans, LA 70170-5100
T: 504.582.8000 | F: 504.582.8583
channan@joneswalker.com
sreynolds@joneswalker.com

*Counsel for ENI US Operating Co., Inc*

AND

*/s/ Alexander J. Baynham*
Thomas P. Diaz (Bar #18863)
Alexander J. Baynham (Bar #36369)
Lance C. Bullock (Bar #38519)
**LISKOW & LEWIS**
Hancock Whitney Center, Suite 5000
701 Poydras Street
New Orleans, Louisiana 70139
Telephone:  504-581-7979
Facsimile:  504-556-4108
Email: tpdiaz@liskow.com
Email: ajbaynham@liskow.com

**MURPHY, ROGERS, SLOSS, GAMBEL & TOMPKINS**

*/s/ Peter B. Tompkins*
Peter B. Tompkins (#17832)
ptompkins@mrsnola.com
Timothy D. DePaula (#31699)
tdepaula@mrsnola.com
Suite 400, Hancock Whitney Center
701 Poydras Street
New Orleans, Louisiana 70139
Telephone: (504) 523-0400
Facsimile: (504) 523-5574

*Counsel for Saipem (Portugal) Comercio Maritimo, SU, LDA*

9

#111830652v4