UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

MARIO GIL

VERSUS

ABC INSURANCE COMPANY, ENI US
OPERATING CO., INC., and SAIPEM
AMERICA, INC.

CIVIL ACTION NO.: 6:24-cv-00201

JUDGE SUMMERHAYS

MAGISTRATE JUDGE AYO

**REPLY MEMORANDUM IN SUPPORT OF SAIPEM (PORTUGAL) COMERCIO
MARITIMO, SU, LDA'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff's opposition confirms the only "hazard" that allegedly caused him to slip was a purported lack of or insufficient non-skid surface on the step. But there is no evidence in this case that the step lacked non-skid or that the non-skid was somehow insufficient. In fact, Plaintiff has come forward with no evidence whatsoever that there was anything wrong with the step. To the contrary, the only evidence regarding the step's non-skid surface is from Master Morris who affirmatively testified that the step had a "shipyard finish, which has a fine non-slip" that "is inherently part of the paint" and that the step was in good condition and inspected regularly.[1]

Even if there were evidence that the non-skid surface of the step was missing or somehow insufficient—there is no such evidence—the Fifth Circuit held in *Kitchens v. Stolt Tankers B.V.* that "the lack of a non-skid surface alone" is not sufficient to give rise to liability under the active control duty. 657 F. App'x 248, 251 (5th Cir. 2016). This is important because Plaintiff conceded in his opposition that there was no substance on the step that caused him to slip.[2] Instead, Plaintiff's

---

[1]    Rec. Doc. 52-3 (Morris Depo) at p. 30:1-10, 47:18-48:11.

[2]    *See* Rec. Doc. 67 (Plaintiff's Opposition) at p. 11 ("Gil never alleged that there was a foreign substance on the step; he affirmed that point in his deposition.").

opposition attempts to manufacture an issue of fact by misrepresenting the findings contained in the Saipem Incident Investigation Report (hereafter "Investigation Report") and the testimony of Chad Harrell. Plaintiff also heavily relies on the fact that the step was repainted with additional non-skid paint after the incident, which is the dictionary definition of a subsequent remedial measure that cannot be used to prove liability. Finally, Plaintiff's reliance on his liability expert's unsupported, speculative opinions cannot change the actual facts of this case that there was no hazard that Saipem has actual or constructive knowledge of that caused Plaintiff to slip. Accordingly, Saipem is entitled to summary judgment as a matter of law.

I.    **The Saipem Incident Investigation Report Found the Step was "In Good Condition" After the Incident.**

Plaintiff's opposition disconcertingly states that the Investigation Report identified the step's "inadequate/incomplete design specifications" as a contributing factor in Gil's fall.[3] But that quotation appears nowhere in the Investigation Report. Worse is that Plaintiff's opposition completely omits the finding in the Investigation Report that the "stairs are in good condition. . . ."[4] Plaintiff left that part out and only quoted the second half of the sentence from the Root Cause Analysis stating that "the decision to paint them with non slip material has been made."[5] Contrary to Plaintiff's assertions, however, nowhere in the Investigation Report does it state that the condition of the step was a contributing factor to Plaintiff's fall.

---

[3]    *See id.* at p. 3.

[4]    Rec. Doc. 52-4 (Saipem Investigation Report) at p. 6.

[5]    *See* Rec. Doc. 67 (Plaintiff's Opposition) at p. 3 ("Saipem itself identified the stairs' 'inadequate/incomplete design specifications' as a contributing factor in Gil's fall, noting that there was a "plan to extend non slip area to cover the step down" after Gil's fall."). *See also* Root Cause Analysis in Rec. Doc. 52-4 (Saipem Investigation Report) at p. 6.

**II.      Chad Harrell's Testimony Regarding Saipem's Post-Incident Investigation Findings is Hearsay, But Also Consistent with the Investigation Report.**

Plaintiff's opposition cites selective hearsay testimony from ENI employee, Chad Harrell, in an attempt to manufacture an issue of fact regarding the findings of Saipem's post-incident investigation. Mr. Harrell's testimony is not only hearsay, but, contrary to Plaintiff's assertions otherwise, it is also consistent with the Investigation Report.

First, the Court should disregard Mr. Harrell's testimony regarding Saipem's findings in the Investigation Report as it is inadmissible hearsay. Mr. Harrell testified he was not on the vessel at the time of the incident, he played no part in the actual investigation, his knowledge was based on the information in Saipem's Investigation Report, and he would "defer to Saipem" on the findings and root cause.[6] Hearsay testimony about what Saipem purportedly "told" him through the Investigation Report (i.e. double hearsay) is not proper summary judgment evidence and cannot create an issue of fact regarding the condition of the step. *See Phillips v. United States*, 500 F. Supp. 2d 668, 674 n. 4 (W.D. Tex. 2006) (statement by dog owner's spouse that she asked owner to get rid of his dog after prior bite was inadmissible hearsay in deposition by parent of second bite victim and was not competent summary judgment evidence in suit alleging United States' liability as owner's landlord at military base) (citing *Martin v. John W. Stone Oil Distrib., Inc.,* 819 F.2d 547, 549 (5th Cir. 1987)).

Even if the Court were to rely on Mr. Harrell's testimony, Plaintiff's opposition does not provide the full context of his testimony. While he initially agreed with Plaintiff counsel's assertion that "Saipem told ENI that they believed there was an inadequate/incomplete design specification that was a root cause of this accident[,]" which is also hearsay, he recanted that statement later in

---

[6]      Rec. Doc. 67-2 (Harrell Deposition) at p. 86:1-22.

his testimony after being provided a copy of the Investigation Report. In fact, Mr. Harrell agreed

that the Investigation Report "found that the stairs are in good condition at the time of the

incident."[7] When Plaintiff's counsel attempted to push back a second time, Mr. Harrell stood firm

on his testimony:

> Q. Listen [to] my question now. It's simpler than that. There's nothing in Saipem's notes to y'all ie. ENI that said that the steps were in working order, they were great, no problem with them. Agree?
>
> MR. BAYNHAM: Object to form.
>
> A. I can't agree to that because it was just shown in the investigation.[8]
>
> [ . . . ]
>
> Q. Exactly. So when you talk to Saipem, they told you the stair was insufficient?
>
> MR. BAYNHAM: Object to form.
>
> Q. (BY MR. MOROUX) Correct?
>
> A. No.[9]

That Mr. Harrell corrected his prior testimony after being shown what was actually written in the

Investigation Report does not create an issue of material fact to defeat summary judgment.

## III.    Plaintiff's Reliance on Subsequent Remedial Measures Cannot Defeat Summary Judgment.

Plaintiff's only purported "evidence" that the non-skid on the step was somehow defective

is that Saipem applied additional non-skid after the incident. But as Plaintiff aptly cites in his

---

[7]      *Id.* at 90:5-12.

[8]      *Id.* at 94:18-24.

[9]      *Id.* at 101:15-19.

opposition, Master Morris testified that he "would not have done so if we hadn't had the . . . slip."[10] That is a textbook subsequent remedial measure, and Rule 407 forbids its use to prove negligence or a dangerous condition. *See* Fed. R. Evid. 407. The Fifth Circuit applies the rule even where, as here, the defendant disputes that any dangerous condition existed: a defendant "does not open the door to evidence of subsequent remedial measures merely by arguing that it was not negligent or that a dangerous condition did not exist." *Relf v. Wal-Mart Stores, Inc.*, 49 F.3d 728, at \*3 (5th Cir. 1995). Plaintiff's opposition fails to address this issue at all, and the Court should disregard Plaintiff's attempt to prove liability based on Saipem's painting of the step with non-skid after the incident.

### IV. Plaintiff's Expert Report Cannot Create a Hazard That Is Not Supported By the Undisputed Facts or the Law.

Plaintiff's opposition also relies heavily on the purported opinions of his liability expert, Michael Lebsack.[11] But Lebsack's primary opinion is that Saipem failed to provide a step that met safety guidelines because it was "not coated with a non-slip surface," which, as discussed above, is contrary to the facts of this case and is legally insufficient according to the Fifth Circuit in *Kitchens*.[12] Second, Lebsack did nothing to show that the non-skid on the step was somehow defective. Indeed, he cites the ASTM coefficient-of-friction standard of 0.5 to 0.6 for safe walking surfaces,[13] but he did not inspect the area himself, did not compare any measurements or dimensions against standards, and did not analyze the coefficient of friction of the surface. Such

---

[10]    Rec. Doc. 52-3 (Morris Depo) at p. 8 (Deposition p. 69:13-15).

[11]    To avoid duplication, Saipem incorporates the arguments and authorities cited in its *Daubert* motion and reply memorandum regarding exclusion of Lebsack's opinions. *See* Rec. Doc. 55, Rec. Doc. 72.

[12]    *See* Rec. Doc. 67 at p. 4 (citing Lebsack's Report at p. 2).

[13]    *Id.* (citing Lebsack's Report at p. 11).

conclusory and unsupported opinions cannot defeat summary judgment. Finally, any purported opinion by Lebsack that there was something wrong with the step's construction is rendered moot by Plaintiff's admissions in his deposition that there was nothing about the construction or configuration of the step that caused him to slip.[14]

### V.     The Two Cases Cited by Plaintiff Are Distinguishable.

The cases cited by Plaintiff denied summary judgment because the record contained evidence of a hazard, which is absent here. For example, in *Lopez v. Quality Constr. & Prod., LLC*, No. 20-00250, 2026 WL 102509 (M.D. La. Jan. 14, 2026), the plaintiff testified that he slipped on what he believed to be water. There was also expert testimony that the absence of a handrail may have been a hazardous condition. Similarly, in *Trigleth v. Ocean Belt Mar., Inc.*, No. 23-65, 2025 WL 1262288 (E.D. La. May 1, 2025), the court denied summary judgment because there was an issue of fact regarding who created the dangerous condition and who had active control over the dolly and pipes that caused the injury.

None of those facts exist here. Indeed, Plaintiff concedes there was no water or other substance on the step and there was nothing about the construction or configuration of the step that caused him to slip.[15] Plaintiff also testified there were structures near the step for him to hold onto while descending the step but that he was holding onto his radio with both hands as he descended the step against Saipem's "House Safety Rules".[16] With no evidence of a hazard and an allegation that he slipped because of insufficient non-skid, this case is on all fours with *Kitchens* and, thus, summary judgment is appropriate.

---

[14]     *See* Rec. Doc. 52-2 (Gil Deposition) at p. 336:9-19; 338:11-20.

[15]     *Id.*

[16]     *Id.* at p. 242:22-245:4; 340:15-341:9.

**VI.      Even if the Step Had a Hazardous Condition, Saipem Had No Notice of It.**

A vessel's liability for a hazardous condition in an area under its control depends on the vessel having actual or constructive knowledge of that condition. *See Scindia Steam Nav. Co. v. De Los Santos*, 451 U.S. 156, 178, (1981) (discussing actual or constructive knowledge of the condition by the shipowner); *Thompson v. Cargill*, 585 F. Supp. 1332, 1334 (E.D. La. 1984). Plaintiff's opposition does not address the notice requirement at all, much less the unrefuted testimony of Master Morris that the step was in good condition and inspected regularly.[17] It is also undisputed that Saipem's log of stop-card entries contain no reports for this step or the surrounding area and there is no evidence suggesting otherwise.[18] As a result, even if the step could be called a hazard, the complete absence of any evidence that Saipem had notice of it independently entitles Saipem to summary judgment as a matter of law.

---

[17]     Rec. Doc. 52-3 (Morris Depo) at p. 30:1-10, 47:18-48:11.

[18]     *See* Rec. Doc. 52-9 at pp. 1-2.

Respectfully submitted,


*/s/ Lance C. Bullock*
Thomas P. Diaz (Bar #18863)
Alexander J. Baynham (Bar #36369)
Lance C. Bullock (Bar #38519)
**LISKOW & LEWIS**
Hancock Whitney Center, Suite 5000
701 Poydras Street
New Orleans, Louisiana 70139
Telephone: 504-581-7979
Facsimile: 504-556-4108
Email: tpdiaz@liskow.com
Email: ajbaynham@liskow.com
Email: lbullock@liskow.com


**MURPHY, ROGERS, SLOSS,
GAMBEL & TOMPKINS**

*/s/ Peter B. Tompkins*
Peter B. Tompkins (#17832)
ptompkins@mrsnola.com
Timothy D. DePaula (#31699)
tdepaula@mrsnola.com
Suite 400, Hancock Whitney Center
701 Poydras Street
New Orleans, Louisiana 70139
Telephone: (504) 523-0400
Facsimile: (504) 523-5574

***Attorneys for Saipem (Portugal) Comercio
Maritimo, SU, LDA***

-8-